UNITED STATES of America, Plaintiff–Appellee,

v.

Ramon CEJA–HERNANDEZ, Defendant–Appellant.

No. 89–30152.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 8, 1990.*

Decided Jan. 30, 1990.

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Michael W. Lynch, Yakima, Wash., for defendant-appellant.

Robert S. Linnell, Asst. U.S. Atty., Yakima, Wash., for plaintiff-appellee.

Before BROWNING, POOLE and BEEZER, Circuit Judges.

PER CURIAM:

Ceja–Hernandez pled guilty to being an illegal alien in the United States after deportation. His presentence report gave him a total offense level of six and a criminal history rating of VI resulting in a sentencing range of twelve to eighteen months. The district court departed upward and sentenced Ceja–Hernandez to twenty-four months. Ceja–Hernandez appeals his sentence.

■ We review the legality of a criminal sentence de novo. *United States v. Cervantes–Lucatero*, 889 F.2d 916, 917 (9th Cir.1989). The district court may depart from the guidelines range where there are circumstances not adequately considered by the Sentencing Commission. 18 U.S.C. § 3553(b); *Id.* at 917. At sentencing the district court justified its departure on the grounds Ceja–Hernandez would be immediately deported following release so that the court could not impose a fine or a program of supervised release.[1] When setting the offense level for entry after deportation,

the Sentencing Commission would certainly have been aware of the practice of promptly deporting aliens after they serve such sentences. *See* 8 C.F.R. § 287.3; 8 U.S.C. § 1251(a)(2).[2] We find the court's grounds for departure "indicates dissatisfaction with the guidelines rather than a reasoned judgment that particular characteristics of the offense ... have not been accounted for." *Id.* at 918 (quoting *United States v. Nuno–Para*, 877 F.2d 1409, 1414 (9th Cir. 1989)).

The government argues the Sentencing Commission determined the offense level for entry after deportation at a time when aliens entered in search of agricultural work. They argue such aliens now come into the country to engage in illegal drug activity and conclude this shift justifies an upward departure. We have already disapproved this argument. *Id.* at 917–18.

■ Finally the government argues the court might have decided Ceja–Hernandez unlawfully entered the United States to pursue drug-related activity thus justifying departure under U.S.S.G. § 5K2.9. However the court did not rely on this factor and neither may we. *Id.* at 919. We further note there is no evidence in the record before us supporting the government's contention Ceja–Hernandez committed the offense of entry after deportation "in order to facilitate or conceal the commission of another offense" as would be required for departure under U.S.S.G. § 5K2.9.

VACATED and REMANDED.

1. The district court stated:
[T]his Court has no quarrel with the work of the Commission. The Court simply feels that because there is not a recognition in these cases of immediate deportation, which effectively prevents the imposition of a fine and which, perhaps more importantly, effectively prevents any kind of supervised program upon release. This court would be naive to believe you're not going to be back here promptly, and finds that a departure is warranted.

2. Within 24 hours after an alien is transferred from prison to immigration authorities, 8 C.F.R.

§ 287.3 provides that "the alien's case shall be presented ... for a determination as to whether there is prima facie evidence that the arrested alien is in the United States in violation of law and for issuance of an order to show cause" why the alien should not be deported; 8 U.S.C. § 1251(a)(2) provides that "[a]ny alien in the United States ... shall, upon order of the Attorney General, be deported who ... entered the United States without inspection ... or is in the United States in violation of this chapter or in violation of any other law of the United States."