**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Leon BRADY, Defendant–Appellant.**

**No. 89–30074.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 1989.

Decided March 18, 1991.

Vernon E. Woodward, Billings, Mont., for defendant-appellant.

Klaus P. Richter, Asst. U.S. Atty., Billings, Mont., for plaintiff-appellee.

Before WALLACE, Chief Judge, PREGERSON and D.W. NELSON, Circuit Judges.

PREGERSON, Circuit Judge:

Leon Brady was convicted of voluntary manslaughter and assault with a dangerous weapon. He appeals the legality of his sentence, contending that its terms impermissibly depart from the Federal Sentencing Guidelines. We conclude that the sentence imposed is incompatible with the Guidelines. We therefore vacate the sentence and remand this matter for further proceedings consistent with this opinion.

## BACKGROUND

Charles Brady, an enrolled member of the Northern Cheyenne Indian Tribe, was indicted in July 1988 for first degree murder and assault with intent to commit murder of two other tribal members on the Northern Cheyenne Indian Reservation. Following trial, the jury convicted Brady not on these charged counts, but on the lesser included offenses of voluntary man-

slaughter and assault with a dangerous weapon.

In February 1989, the U.S. Probation Officer submitted to the court the required presentence report. The report calculated the total offense level at 24 (including a two-level reduction in offense severity because Brady accepted responsibility for the offenses). The report also set Brady's criminal history category at "I."[1] Under these calculations, the applicable sentencing guideline range indicated a sentence of 51 to 63 months.

The presentence report, however, noted that an upward departure from this range may be appropriate on the basis of Brady's tribal court convictions on two misdemeanor assault charges. The report suggested that without consideration of these tribal offenses, Brady's criminal history category "does not adequately represent the seriousness of his criminal past." The report stated that if the history category were raised to "II" on this basis, the guideline range would be 57 to 71 months, and if the category were raised to "III," the range would be 63 to 78 months.

At the sentencing hearing, the district court sentenced Brady to a total of 180 months (15 years) of imprisonment for the two offenses. In increasing the sentence well beyond the range recommended in the presentence report, the court challenged the probation officer's calculations and found cause for departing upward from the Guidelines. First, the judge did not believe that Brady had accepted responsibility for the committed offenses, and therefore denied the two-level reduction in the total offense level. Second, the judge felt that criminal history category "I" did not adequately reflect the seriousness of Brady's criminal history because the tribal court convictions were not taken into account. Third, as justification for an upward departure from the Guidelines, the judge referred to the fact that a firearm had been discharged when the offenses were committed. Fourth, the judge departed from the Guidelines based on the defendant's

"state of mind" during commission of the offenses. Finally, the judge indicated that the sentences should run consecutively, not concurrently, thus aggregating the maximum five year sentence for assault with a dangerous weapon with the maximum ten year sentence for voluntary manslaughter.

Brady contends that under the Guidelines none of these bases for sentence enhancement is permissible. He argues that he accepted responsibility for the crimes for which he was convicted; that serious constitutional problems are involved in relying on minor, uncounseled tribal convictions to depart upward from the Guidelines; that the sentence had been unjustifiably enhanced on the basis of the firearm discharge; that the district court erred in departing upward by finding that Brady acted with the specific intent to kill both victims, despite the fact that the jury acquitted Brady of first degree murder and assault with intent to commit murder; and that the decision to run the sentences consecutively, rather than concurrently, violated the procedure mandated by the Guidelines.

## DISCUSSION

### I. Notice of Disputed Elements

Before we consider whether the sentencing court properly deviated from the sentencing range recommended in the presentence report, we first address the issue of notice of the factors the court may consider in deciding whether to depart from the Sentencing Guidelines. The Guidelines require that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." United States Sentencing Commission, *Guidelines Manual* [hereinafter U.S.S.G.] § 6A1.3(a), p.s. The Guidelines further state that

[t]he court shall resolve disputed sentencing factors in accordance with Rule 32(a)(1), Fed.R.Crim.P. . . . , notify the par-

---

1. In 1985, Brady was convicted in a Montana state court for driving under the influence. He

was sentenced to a sixty day suspended sentence and a $300 fine.

ties of its tentative findings and provide a reasonable opportunity for the submission of oral or written objections before imposition of sentence.

U.S.S.G. § 6A1.3(b), p.s.[2]

■ The presentence report stated only one ground for possible upward departure—the use of Brady's tribal court convictions to increase his criminal history category. Brady contends that he was not notified before the sentencing hearing of several other factors relied on by the sentencing court to depart from the Guidelines. Brady argues that, because he was not given notice of these factors, they may not be used to enhance the sentence beyond the range stated in the presentence report. We agree. In *United States v. Nuno–Para,* 877 F.2d 1409 (9th Cir.1989), we held that the notice

> requirement is not satisfied by the fact that the relevant information is present within the presentence report. Rather, *such information either must be identified as a basis for departure in the presentence report, or, the court must advise the defendant that it is considering departure based on a particular factor* and allow defense counsel an opportunity to comment.

*Id.* at 1415 (citations omitted) (emphasis added).

■ The government contends that notice should not be required in Brady's case because "a full trial was had, and all parties knew exactly what the positions of the respective parties were.... There was no way that the defendant can claim to be surprised by any ruling by the court [on sentencing]." But in *United States v. Rafferty,* 911 F.2d 227, 230 (9th Cir.1990), we rejected the contention that the notice requirement does not apply if the ground for departure should have been readily apparent to the defendant. Thus Brady should have been notified before sentencing that the court intended (1) to deny him the acceptance of responsibility reduction,[3] (2) to depart from the Guidelines based on the court's determination of Brady's state of mind, (3) to enhance the sentence based on the firearm discharge, and (4) to run the sentences consecutively rather than concurrently. Only the acceptance of responsibility issue presents disputed facts that should be resolved at an evidentiary hearing on remand. The trial court will of course be bound by our rulings on disputed legal questions in determining the proper sentence on remand.

## II. Acceptance of Responsibility

The Guidelines allow a two-level reduction in the defendant's total offense level if the "defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). This reduction applies whether the conviction is based on a guilty plea or on a guilty verdict following trial. U.S.S.G. § 3E1.1(b). In its commentary, the Commission lists several factors to guide a sentencing court in deciding whether the defendant accepted responsibility for his or her criminal conduct. U.S.S.G. § 3E1.1, comment. (n. 1).[4]

---

**2.** Fed.R.Crim.P. 32(a)(1) states in part:
> At the sentencing hearing, the court shall afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence.

**3.** We note that the adjustment of responsibility reduction is an "adjustment" to, rather than a "departure" from, the Guidelines sentencing range. As such, the reduction technically does not fall within the holding of *Nuno–Para,* which requires that defense counsel be given notice and an opportunity to comment on all sentencing "departures." Nonetheless, defendant's acceptance of responsibility is a "factor important to the sentencing determination" under

§ 6A1.3(a) of the Guidelines. A sentencing court therefore may not reject the reduction recommended in the presentence report without giving the defendant notice and an adequate opportunity to present information to the court.

**4.** These factors include, but are not limited to, the following:
> (a) voluntary termination or withdrawal from criminal conduct or associations;
> (b) voluntary payment of restitution prior to adjudication of guilt;
> (c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;
> (d) voluntary surrender to authorities promptly after commission of the offense;

■ The sentencing court declined to follow the recommendation in the presentence report that Brady be given a two-level acceptance of responsibility reduction. Because the acceptance of responsibility reduction was included in the presentence report, Brady was led to believe that this issue would not be raised at the sentencing hearing. The trial court's denial of the two-level reduction in offense level, without notice to Brady of its intent to deny the reduction, deprived Brady of an adequate opportunity to present information to the court on his acceptance of responsibility.

We are not in a position to review effectively the acceptance of responsibility determination in this case. For us to defer to a trial court's acceptance of responsibility determination,[5] the record on this issue must be clear. The trial court did not refer to any of the factors outlined in the commentary to § 3E1.1. The record does not inform us whether Brady voluntarily surrendered to authorities promptly after commission of the offense, whether he offered restitution to the Small family before his adjudication for manslaughter, or most importantly, whether he voluntarily and truthfully admitted to authorities that he was involved in the offenses and related conduct.[6]

The sentencing court should have articulated its reasons and justifications for denying the § 3E1.1 reduction, should have notified the defendant before the sentencing hearing of these tentative findings, and should have held a hearing on the acceptance of responsibility issue. We vacate the denial of the acceptance of responsibility reduction and remand for further sentencing proceedings, including a hearing on the facts in dispute on this issue.

### III. Unnoticed Grounds for Sentence Departure

■ The Guidelines permit departure only when a court finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). A departure from the Guidelines is warranted only in an atypical case, i.e., one in which a defendant's conduct significantly differs from the "norm." U.S.S.G. Ch. 1, Pt. A(4)(b). When departing from the Guidelines, the court must state "the specified reason for imposition of a sentence different from that described in the [Guidelines]" with sufficient particularity "to permit meaningful appellate review" of the departure decision. *United States v. Wells*, 878 F.2d 1232, 1233 (9th Cir.1989) (per curiam). Meaningful appellate review also requires that the court explain the role each factor played in the departure decision. *United States v. Todd*, 909 F.2d 395, 399 (9th Cir.1990) (remanding "to the district court to express its reasons for the extent of the departure").

■ In this case, the sentencing court departed from the maximum 63 month sentence referred to in the probation report by imposing consecutive sentences totaling 180 months. The district court explained in general terms that the defendant (1) had not accepted responsibility for his offenses, (2) had discharged a firearm, (3) had acted with premeditation in committing the crimes for which he was convicted, and (4) had a tribal court conviction record showing a propensity to harm others. But the

(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;
(f) voluntary resignation from the office or position held during the commission of the offense; and
(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

5. A "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n.5).

6. This last point is specifically disputed by the parties. The sentencing court stated that Brady never gave testimony as to his remorse or accountability for the offense. The defendant asserts that he *did* make timely statements of his involvement in the offense conduct during and after trial. These timely statements were apparently accepted by the probation officer who allowed the § 3E1.1 two-level reduction for acceptance of responsibility.

court failed to indicate the extent each factor played in increasing the sentence almost 200% from the maximum sentence referred to in the probation report. The court needs to state the reasons that justify enhancing the sentence by 117 months.[7] Because issues may recur on remand, we address in turn each of the sentencing court's unnoticed grounds for upward departure.[8]

### A. Consecutive Versus Concurrent Sentences

The court sentenced Brady to consecutive maximum terms for his two convictions. The court did not explain the decision to impose *consecutive* sentences. The decision to impose consecutive sentences violates the Guidelines requirements.

The Guidelines specify procedures for determining the sentences to be imposed in cases in which the defendant has been convicted of multiple counts. The Guidelines also specify whether the sentences should run concurrently or consecutively. First, whenever a defendant has been convicted of multiple counts, a "combined adjusted offense level" is calculated.[9] Next, an adjustment is made, if any, for the defendant's acceptance of responsibility. The resulting offense level is the "total offense level." Using the total offense level and the defendant's criminal history category, the guideline range is determined from the sentencing table. Once the guideline range is established, § 5G1.2 determines whether the sentence should run concurrently or consecutively.

In Brady's case, the combined adjusted offense level calculated in the presentence report is 26, not counting any adjustment for acceptance of responsibility. Neither party disputes this figure. Under the sentencing table, the guideline range indicated for an adjusted combined offense level of 26 is 63–78 months for a criminal history category of "I," 70–87 months for a criminal history category of "II," and 78–97 months for a criminal history category of "III."

Subsections (c) and (d) of § 5G1.2 determine whether the sentences imposed are to run consecutively or concurrently. The subsections focus on the notion of "total punishment," defined in the commentary to the Guidelines as the combined length of the sentences as determined by the adjusted combined offense level. Subsections (c) and (d) state:

> (c) If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law.

> (d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.

---

7. The applicable guideline range is 51 to 63 months *with* the acceptance of responsibility reduction and 63 to 78 months *without* the acceptance of responsibility reduction. Fifteen months of the enhancement therefore can be accounted for by the district court's denial of the acceptance of responsibility reduction.

8. We assume a de novo standard of review in determining whether the factors relied upon by the sentencing court to depart from the Guidelines are permissible. *United States v. Enriquez–Munoz,* 906 F.2d 1356, 1358 n. 4 (9th Cir. 1990). Even under a more deferential standard of review, however, we find the sentencing court's departures unwarranted.

9. If the counts are closely related (i.e., involve "substantially the same harm"), the counts are "grouped" under § 3D1.2 before a combined adjusted offense level is calculated. The government brief limits its argument against concurrent sentencing in this case to opposition of "grouping" Brady's two convictions. This argument misses the point. Brady does not contend that the two counts should be grouped because they involve substantially the same harm (clearly they do not). Rather, Brady's argument appropriately focuses on his entitlement to concurrent sentencing under § 5G1.2.

U.S.S.G. § 5G1.2(c)–(d). The commentary elaborates on these requirements as follows:

> Usually, at least one of the counts will have a statutory maximum adequate to permit imposition of the total punishment as the sentence on that count. The sentence on each of the other counts will then be set at the lesser of the total punishment and the applicable statutory maximum, and be made to run concurrently with all or part of the longest sentence.

U.S.S.G. § 5G1.2, comment.

■ The concurrent-consecutive determination boils down to this: consecutive sentences are imposed only if "no count carries an adequate statutory maximum" to contain the sentence prescribed by the adjusted combined offense level. *Id.* In this case, the count with the highest statutory maximum, voluntary manslaughter, has a statutory maximum of 120 months. 18 U.S.C. § 1112. Under criminal history categories "I," "II," or "III," and the sentencing ranges referred to above, any sentence set within the guideline range will necessarily fall within the 120 month statutory maximum for voluntary manslaughter.

The sentencing court thus erred by sentencing Brady to consecutive 10 and 5 year sentences (totaling 180 months) on his convictions for voluntary manslaughter and assault with a deadly weapon.[10] The portion of the sentence attributable to the sentencing court's determination that the sentences should run consecutively is a drastic departure from the Guidelines and an unreasonable sentence. 18 U.S.C. § 3742(f)(2). We therefore set aside this portion of the sentence and remand for appropriate sentencing.

## B. *The Sentencing Court's Reconsideration of Defendant's State of Mind*

The sentencing court stated that upward departure from the Guidelines is warranted "based on the defendant's state of mind, and the degree of planning and preparation of [the] offenses." The court cited § 5K2.1 of the Guidelines as authority that "a substantial increase may be appropriate if the death was intended or knowingly risked," U.S.S.G. § 5K2.1, p.s., and proceeded to discuss the defendant's *intent* to kill both victims. The district court stated:

> In this case, the defendant left the initial confrontation and obtained a hunting rifle from a relative. After procuring ammunition, the defendant went in search of the victims. His intent to inflict serious injury or to kill the victims was demonstrated in that he began shooting at them as soon as he saw them. The defendant fired multiple shots at both victims with a hunting rifle at close range. These events show that Brady knowingly intended to kill both victims.

Brady contends that this finding of the court directly contradicts the jury's verdict which acquitted him of first degree murder and assault with intent to commit murder. He argues that an upward departure from the Guidelines may not be based on a factual finding by the district court that effectively overrules the jury's verdict.

Five other circuits allow a district court to make findings of fact during sentencing that have been implicitly rejected by a jury's not guilty verdict. *See, e.g., United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 179–82 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Dawn,* 897 F.2d 1444, 1449–50 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 389, 112 L.Ed.2d 400 (1990); *United States v. Juarez–Ortega,* 866 F.2d 747, 748–49 (5th Cir.1989); *United States v. Ryan,* 866 F.2d 604, 609 (3d Cir.1989); *United States v. Mocciola,* 891 F.2d 13, 16–17 (1st Cir.1989). *But cf. United States v. Perez,* 858 F.2d 1272, 1277 (7th Cir.1988) ("This court has upheld the trial court's consideration of a prior acquittal as long as

---

**10.** Section 5G1.2(a) also requires that sentences on multiple counts be imposed consecutively if mandated by statute. This requirement does not apply here. *Neither of the offenses for* which Brady was convicted mandates a consecutive sentence. *See* 18 U.S.C. § 113(c) and 18 U.S.C. § 1112.

the acquittal is not relied upon to enhance the sentence.").[11]

*United States v. Ryan,* 866 F.2d 604 (3d Cir.1989), is illustrative. In *Ryan,* the jury acquitted the defendant of possession of a controlled substance with intent to distribute, but found him guilty of the lesser included offense of simple possession of a controlled substance. The defendant argued "that the district court erred in considering the packaging of the drugs in departing from the sentencing guidelines, maintaining that, in effect, he was sentenced for a crime of which he had been acquitted, and claiming that the guidelines prohibit such an approach." *Id.* at 606. The Third Circuit rejected the defendant's argument. It reasoned that, before the Guidelines, a sentencing "court was permitted to consider evidence on counts of which a defendant was acquitted in sentencing the defendant." *Id.* at 609. The Third Circuit concluded that in promulgating the Guidelines, the Sentencing Commission intended to permit sentencing courts to continue to consider such information in determining whether to depart from the Guidelines.

We find this analysis unpersuasive. We would pervert our system of justice if we allowed a defendant to suffer punishment for a criminal charge for which he or she was acquitted. The Guidelines recognize that voluntary manslaughter is to be punished less severely than murder by setting a lower base offense level for voluntary manslaughter than for murder. A sentencing court should not be allowed to circumvent this statutory directive by making a finding of fact—under any standard of proof—that the jury has necessarily rejected by its judgment of acquittal.[12]

We acknowledge that in general the Guidelines permit a sentencing court to consider evidence of sentencing factors that are not elements of the offense of conviction. *See* U.S.S.G. § 1B1.3(a). But it does not follow that the Guidelines permit a court to reconsider facts during sentencing that have been rejected by a jury's not guilty verdict. Otherwise, any time a judge disagreed with the jury's verdict, the judge could "reconsider" critical elements of the offense to avoid the restrictions of the Guidelines and push the sentence to the

---

**11.** In two other sentencing cases cited by the dissent, *United States v. Fonner,* 920 F.2d 1330 (7th Cir.1990), and *United States v. Isom,* 886 F.2d 736 (4th Cir.1989), the district court relied on undisputed facts, not on facts rejected by a jury's not guilty verdict. In *Fonner,* the defendant had previously been acquitted of murder; the defendant admitted killing the victim, but argued that he acted in self-defense. More than 15 years later, the defendant was convicted of mailing threatening letters in violation of 18 U.S.C. § 876. The district court increased the defendant's sentence because he had killed before, but did not conclude that the defendant had committed murder. 920 F.2d at 1332. The Seventh Circuit affirmed, explaining that the fact of the killing is relevant to determine the seriousness of the defendant's threatening letters. *Id.* In *Isom,* the defendant was acquitted of counterfeiting, but convicted of dealing with counterfeit obligations. He admitted all of the elements of counterfeiting except his intent to defraud. 886 F.2d at 738. The district court applied the adjustment under § 2B5.1(b)(2) to increase the defendant's base offense level based on the fact that he admitted operating the printing press. *Id.* at 739.

**12.** Our decision has nothing to do with the standard of proof. We are not involved with determining the appropriate standard of proof that a district court must apply at sentencing. Rather, our decision simply limits the facts that a court may rely on in imposing sentence. The Sentencing Guidelines themselves draw the curtain on certain sentencing facts. *See, e.g.,* U.S.S.G. § 5H1.10 (race, sex, national origin, creed, religion, and socio-economic status "are not relevant in the determination of a sentence"); U.S.S.G. § 5H1.4 ("Drug dependence or alcohol abuse is not a reason for imposing a sentence below the guidelines."). Our decisions also limit a sentencing court's discretion to rely on other facts. *See, e.g., United States v. Enriquez–Munoz,* 906 F.2d 1356 (9th Cir.1990) (greed of defendant is impermissible basis for departure); *United States v. Alvarez–Cardenas,* 902 F.2d 734 (9th Cir.1990) (deportability is improper basis of departure); *United States v. Ceja–Hernandez,* 895 F.2d 544 (9th Cir.1990) (alienage status not a proper basis); *United States v. Doering,* 909 F.2d 392 (9th Cir.1990) (need for psychiatric help does not justify departure); *United States v. Watt,* 910 F.2d 587 (9th Cir.1990) (district court erred in denying acceptance of responsibility adjustment by considering defendant's pre-plea refusal to provide self-incriminating evidence). Here, we define one more category of facts that cannot be used by a district court in imposing sentence, i.e. facts that have been rejected by a jury's not guilty verdict.

maximum—in effect punishing the defendant for an offense for which he or she had been acquitted. True, the sentence is ultimately capped by the statutory maximum of the offense for which the defendant was convicted. Yet the maximum sentences prescribed by the statutes were formulated in a time when a defendant was eligible for parole after serving one-third of his or her sentence less good time. There is no such possibility of early release under the Guidelines. In this case, the sentencing court effectively sentenced Brady for second degree murder and assault with intent to commit murder—not the crimes for which he was convicted, voluntary manslaughter and assault with a dangerous weapon.[13]

We hold that the sentencing court's determination of Brady's state of mind is an impermissible factor on which to depart from the Guidelines.[14] We remand this portion of the sentence noting that the jury's determination of the defendant's state of mind is dispositive in the sentencing hearing, and that the sentencing court may not circumvent the jury's verdict by departing from the Guidelines on this basis.

### C. Firearm Discharge

■ At the time of sentencing, the court justified a portion of the upward departure on the basis that a firearm had been discharged during the commission of the second count, assault with a deadly weapon. In doing so, the court overlooked the fact that the computed adjusted offense level on this count had taken the firearm discharge into account, increasing the offense level of this count by five levels. This increase adequately accounts for the firearm discharge under the Guidelines. Because a departure from the Guidelines is only per-

mitted when based on a circumstance not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines, any portion of the upward departure that is based on the firearm discharge is thus an unreasonable departure from the applicable guideline range. 18 U.S.C. § 3742(f)(2). We remand the determination of this portion of the sentence noting that the firearm discharge has been adequately considered by the Guidelines.

### IV. Departure on the Basis of Tribal Court History

Under the theory that "[a] defendant's record of past criminal conduct is directly relevant" to the purposes of sentencing under the Comprehensive Criminal Control Act, U.S.S.G. Ch. 4, Pt. A, intro. comment., the Guidelines mandate a computation of "criminal history points," leading to a determination of a "criminal history category." The appropriate sentencing range under the Guidelines is determined from the sentencing table using the defendant's total offense level and criminal history category.

A sentence for a tribal court conviction is not counted in the calculation of a defendant's criminal history category. U.S.S.G. § 4A1.2(i). If, however, "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." U.S.S.G. § 4A1.3, p.s. The Guidelines note that such departure may be based on information concerning "tribal offenses" not used in computing a defen-

---

**13.** The Guidelines set the base offense level for second degree murder at 33 (§ 2A1.2), and for assault with intent to commit second degree murder at 22 (§ 2A2.1). The "combined offense level" for both offenses as determined under §. 3D1.4 is 33. With a criminal history category of "I," the appropriate sentencing range for that combined offense level is 135 to 168 months (*still below the court's total sentence of 180 months*), and for a criminal offense category of "II," 151 to 188 months.

**14.** Brady also argued that the sentencing court's approach contained constitutional flaws as well. Because we decide this issue on statutory grounds, we do not reach the constitutional issues. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981); *Capitol Industries–EMI, Inc. v. Bennett,* 681 F.2d 1107, 1112 n. 11 (9th Cir.), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655, *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982).

dant's criminal history category. U.S.S.G. § 4A1.3(a), p.s.

■ Though Indian tribes do not have the full attributes of sovereignty, *United States v. Kagama*, 118 U.S. 375, 381, 6 S.Ct. 1109, 1112, 30 L.Ed. 228 (1886), tribes retain the power to prescribe laws for their members and to punish infractions of these laws. *United States v. Wheeler*, 435 U.S. 313, 322–24, 98 S.Ct. 1079, 1085–87, 55 L.Ed.2d 303 (1978). Criminal tribal courts, however, may not impose punishment greater than $5000 or one year imprisonment, or both, per offense. 25 U.S.C. § 1302(7). Persons convicted under tribal laws are entitled to be represented by counsel at tribal court proceedings provided that they pay for the representation themselves. 25 U.S.C. § 1302(6). But there is no absolute right of counsel in tribal courts. *United States v. Ant*, 882 F.2d 1389, 1391–92 (9th Cir.1989).

In the case at hand, the defendant was convicted of two misdemeanor assault and battery offenses, in 1979 and in 1983, in a Northern Cheyenne Tribal Court. The offenses are described in the Cheyenne Code of Indian Tribal Offenses, Ch. V, § 2.[15] The maximum sentence allowed under the section was six months or $300. Brady received sentences of $50 or 25 days for the 1979 conviction, and $150 or 15 days for the 1983 conviction, far below the maximum of an already minor offense. Brady was not represented by counsel at either proceeding.

■ An upward departure in Brady's criminal history category based on these two tribal convictions is not justified for two reasons. First, criminal history depar-

tures are warranted only when the criminal history category "significantly underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes," thus placing the defendant in a category where his history is "significantly more serious than that of most defendants in the same criminal history category." U.S.S.G. § 4A1.3, p.s.

The sentencing court in this case does not refer to the seriousness of Brady's tribal convictions, but only to their evidence of the "propensity of the defendant to harm others in society." But the five examples listed by the Commission as possible grounds for departure *all* make reference to previous "serious" or "large-scale" offenses which have not been included in the criminal history calculation.[16] Neither of Brady's tribal assault convictions, both sentences of less than 30 days, represent this level of seriousness. Nor do these tribal court convictions make Brady's criminal history "significantly more serious" than histories of other offenders in category "I" as required by the Guidelines policy statement for § 4A1.3. Furthermore, the court did not explain how Brady's two convictions create a "propensity" in the defendant to commit future crimes, given the minor character of his past offenses.

■ Second, both of Brady's convictions were obtained in uncounseled proceedings. The Sixth Amendment requires that "no indigent criminal defendant be sentenced to a *term of imprisonment* unless the State has afforded him the right to assistance of appointed counsel in his defense." *Scott v. Illinois*, 440 U.S. 367, 374,

---

**15.** "Any person who shall willfully strike another person or otherwise inflict bodily injury, or who shall, by offering violence, cause another to harm himself shall be deemed guilty of assault and battery and upon conviction thereof shall be sentenced to labor for a period not to exceed six months and or a fine not to exceed three hundred dollars." Code of Indian Tribal Offenses, Ch. V, § 2. The Code has been subsequently revised. This is the statement of the offense at the time Brady was convicted.

**16.** "Examples might include the case of a defendant who (1) had several previous foreign sen-

tences for *serious offenses*, (2) had received a prior consolidated sentence of ten years for a series of *serious* assaults, (3) had a similar instance of *large scale* fraudulent misconduct established by an adjudication in a Securities and Exchange Commission enforcement proceeding, (4) committed the instant offense while on bail or pretrial release for another *serious offense* or (5) for appropriate reasons, such as cooperation in the prosecution of other defendants, had previously received an extremely lenient sentence for a *serious offense*." U.S.S.G. § 4A1.3, p.s. (emphasis added).

99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979) (emphasis added). We agree with the plurality in *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), that the constitutional rule enunciated in *Scott* also requires that an "uncounseled misdemeanor conviction [may] not be used collaterally to impose an increased term of imprisonment upon a subsequent conviction." *Id.* at 226, 100 S.Ct. at 1587 (Marshall, J., concurring); *id.* at 224, 100 S.Ct. at 1586 (Stewart, J., concurring); *see also United States v. Tucker,* 404 U.S. 443, 449, 92 S.Ct. 589, 593, 30 L.Ed.2d 592 (1972) (remanding for resentencing because district court considered two unconstitutionally invalid felony convictions in imposing an enhanced sentence); *United States v. Williams,* 891 F.2d 212, 214 (9th Cir.1989) ("The consensus of [the *Baldasar* ] concurrences is that an uncounseled conviction which is invalid for the purposes of imposing a sentence of imprisonment, though valid in itself for imposing a nonprison sentence, is also invalid for enhancing a sentence of imprisonment."), *cert. denied,* — U.S. —, 110 S.Ct. 1496, 108 L.Ed.2d 631 (1990). *Contra United States v. Eckford,* 910 F.2d 216 (5th Cir.1990) (holding that prior decisions of the Fifth Circuit have rejected the plurality's view in *Baldasar* that uncounseled misdemeanor convictions cannot be used to increase a term of imprisonment during sentencing for a subsequent criminal offense).

The government's main argument is that the prior tribal convictions played only a small role in the departure. Because the sentencing court did not indicate the extent each factor played in the sentence departure, it is impossible to determine the precise sentence enhancement attributable to the court's reliance on the uncounseled convictions. Nonetheless, we hold that any term of imprisonment imposed on the basis of an uncounseled conviction where the defendant did not waive counsel violates the Sixth Amendment under *Baldasar.*[17]

Any portion of the sentence that is based on Brady's prior tribal convictions is an unreasonable sentence under 18 U.S.C. § 3742(f)(2). The convictions are simply not serious enough to warrant an upward grade in Brady's criminal history category. Their use unconstitutionally imposes a sentence based on an uncounseled conviction. We remand the criminal history category issue and note that the tribal court convictions may not be used to depart from the Guidelines.

## CONCLUSION

For the reasons stated in this opinion, we vacate the sentence and remand for further sentencing proceedings consistent with this opinion.

WALLACE, Chief Judge, concurring in part and dissenting in part:

I agree with the majority that we must vacate the sentence and remand the case. The district judge failed to give notice of his intent to depart from the Sentencing Guidelines as required by *United States v. Nuno–Para,* 877 F.2d 1409, 1415 (9th Cir. 1989). However, because we have vacated the sentence on this basis, we need not decide any other issues raised on this appeal. Brady's allegations of error should be considered in the first instance by the district judge, who will now have the benefit of briefing and argument by both parties. Therefore, I write separately.

Instead of simply vacating the sentence and remanding the case, the majority rules

---

**17.** This is not a case where the sentencing court considered the *conduct* underlying the prior convictions in determining whether departure from the Guidelines was warranted. We give no opinion on the constitutionality of a departure on that basis. *See United States v. Fleishman,* 684 F.2d 1329, 1346 (9th Cir.) (sentencing court's consideration of prior uncounseled Mexican convictions was not error where court enhanced sentences on the *"fact* that [defendants] had been involved in drug-related offenses and had not learned from their experiences") (emphasis added), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982); *United States v. Belgard,* 694 F.Supp. 1488, 1501 (D.Or.1988) ("I do not read *Tucker* [, 404 U.S. 443, 92 S.Ct. 589] to prohibit a probation officer from using information about episodes which later led to tribal convictions in preparing his presentence report"), *aff'd in part, rev'd in part,* 894 F.2d 1092 (9th Cir.1990).

on all of the district judge's future sentencing decisions. These rulings are premature. The sentence has been vacated, and thus the district judge's denial of the sentence reduction for acceptance of responsibility, his decision to sentence consecutively, and his grounds for departure from the Sentencing Guidelines need not be decided. With notice and the presentations by counsel, he may well enter a different sentence. By ruling on a sentence that has not yet been imposed, the majority runs the risk of reaching erroneous conclusions based on incomplete information.

For example, the decision whether to sentence Brady concurrently or consecutively rests on a number of factors, including the offense level and sentence adjustments. *See* United States Sentencing Commission, *Guidelines Manual,* §§ 3D1.1–3D1.5, 5G1.2 (Nov.1990) (U.S.S.G.). Despite this fact, the majority hypothesizes that any consecutive sentencing is "a drastic departure from the Guidelines and an unreasonable sentence." I believe, however, that we should refrain from speculating about future sentences, and should review the district judge's new sentencing decision, including any upward departure, only when it is before us.

A second and more unfortunate unnecessary excursion centers on the majority's theme that "the Guidelines [do not] permit a court to reconsider facts during sentencing that have been implicitly rejected by a jury's not guilty verdict." However, this position is contrary to statute, the Sentencing Guidelines, and to the position taken by all other circuits ruling on the issue.

Before the Sentencing Guidelines were enacted, a sentencing judge was permitted to consider a wide range of evidence, "in order to tailor the punishment to the criminal rather than to the crime." *United State v. Morgan,* 595 F.2d 1134, 1136 (9th Cir.1979). Such relevant evidence included information concerning crimes for which the defendant had been acquitted. *Id.* at 1136–37; *see also United States v. Atkins,* 480 F.2d 1223, 1224 (9th Cir.1973). Facts relevant to sentencing need only be proven by a preponderance of the evidence, *McMil-*

*lan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 2418, 91 L.Ed.2d 67 (1986), therefore a jury finding that the prosecution has not proven facts beyond a reasonable doubt does not bar the judge from reconsidering these facts during sentencing. *See United States v. Mocciola,* 891 F.2d 13, 17 (1st Cir.1989) (*Mocciola*) (pointing out different standard of proof).

There is no evidence that Congress intended the Sentencing Guidelines to alter existing law by limiting the scope of evidence available to a judge during sentencing. In fact, the language of the applicable statute compels the opposite conclusion. Section 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court ... may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. This statute was in effect prior to the Sentencing Guidelines and was incorporated, without changes, into the Sentencing Reform Act. *See* Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II § 212(a)(1), 98 Stat. 1987 (1984). As the drafters of the Sentencing Guidelines point out, "[t]he recodification of this 1970 statute ... makes it clear that Congress intended that no limitation would be placed on the information that a court may consider in imposing an appropriate sentence under the [Guidelines]." U.S.S.G. § 1B1.4, comment. (backg'd.); *see also id.* § 1B1.4 (following congressional mandate, by providing that "[i]n determining ... whether a departure from the guidelines is warranted, the court may consider, *without limitation, any information* concerning the background, character and conduct of the defendant" (emphasis added)).

This position seems clear to a reader, but the majority sees it differently. Without citing any authority, the majority carves out an exception to the statute and the Sentencing Guidelines, and indeed does not explain why we are not bound by their terms. In doing so, the majority creates an unnecessary intercircuit conflict. The Fifth Circuit has found "without merit" the argument that by considering facts under-

lying a crime for which a defendant was acquitted, the judge "overrode the jury's determination of a fact issue." *United States v. Juarez–Ortega*, 866 F.2d 747, 749 (5th Cir.1989). Instead, the court held that "[a]lthough the jury may have determined that the government had not proved all of the elements of the [charged] offense beyond a reasonable doubt, such a determination does not necessarily preclude consideration of underlying facts of the offense at sentencing." *Id.* Six other circuits agree. *United States v. Fonner*, 920 F.2d 1330 (7th Cir.1990) (judges may consider prior misconduct despite the defendant's acquittal on charges arising out of that misconduct); *United States v. Rodriguez–Gonzalez*, 899 F.2d 177, 179–82 (2d Cir.) (Guidelines have not changed principle that sentencing factors need only be proven by preponderance of the evidence), *cert. denied*, — U.S. —, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Dawn*, 897 F.2d 1444, 1449–50 (8th Cir.) (same), *cert. denied*, — U.S. —, 111 S.Ct. 389–90, 112 L.Ed.2d 400 (1990); *Mocciola*, 891 F.2d at 16–17 (facts underlying prior acquittal may be considered by sentencing court); *United States v. Isom*, 886 F.2d 736, 738 (4th Cir.1989) (judge may enhance sentence for conduct that did not result in conviction); *United State v. Ryan*, 866 F.2d 604, 609 (3d Cir.1989) (Commission intended that courts should continue to consider conduct for which defendant acquitted).[1] Not one circuit, until now, is to the contrary. Why should the Ninth Circuit be different?

The majority explains its disagreement with all the other circuits ruling on the issue by arguing that permitting the judge to reconsider disputed facts during sentencing enables the judge to "punish[ ] the defendant for an offense for which he or she ha[s] been acquitted." This is untrue. The judge's sentencing discretion is limited by the statutory maximum of the offense for which the defendant was convicted, as well as by the rigorous standard of review applied to evaluate guideline departures. *See United States v. Lira–Barraza*, 897 F.2d 981 (9th Cir.) (departure must satisfy five step analysis), *reh'g granted en banc*, 909 F.2d 1370 (1990). In this case, if on remand the district judge imposes the statutory maximum sentence on the voluntary manslaughter count (120 months), this sentence will still fall below the Sentencing Guidelines's *minimum* sentence for second degree murder (135 months). *See* U.S.S.G. §§ 2A1.2, 2A1.3.

The majority's stated reason for abandoning precedent is that "the maximum sentences prescribed by the statutes were formulated in a time when a defendant was eligible for parole." Although an accurate statement, this does not justify limiting the scope of information available to the district judge during sentencing. The Sentencing Reform Act explicitly provides that a judge may depart upward from the Sentencing Guidelines, *see* 18 U.S.C. § 3553(b), and authorizes the judge to consider any relevant evidence in making this decision. *Id.* § 3661. Therefore, there is no basis for the majority's conclusion that by eliminat-

---

**1.** In footnote 11, the majority attempts to distinguish *United States v. Fonner*, 920 F.2d 1330 (7th Cir.1990), and *United States v. Isom*, 886 F.2d 736 (4th Cir.1990), by arguing that in these cases "the district court relied on undisputed facts, not on facts rejected by a jury's not guilty verdict." This narrow reading ignores the reasoning underlying both opinions. Both cases explicitly endorse this dissent's position that because of different standards of proof, conduct not resulting in a guilty verdict may be used to enhance a sentence.

For example, in *Isom* the Fourth Circuit stated that "[a] verdict of acquittal demonstrates only a lack of proof beyond a reasonable doubt; it does not necessarily establish the defendant's innocence." *Isom*, 886 F.2d at 738. The court concluded that conduct not resulting in a con-

viction could be the basis for a sentence enhancement as long as those facts "meet the reliability standard." *Id.* at 739, *quoting Juarez–Ortega*, 866 F.2d at 749. Similarly, in *Fonner*, the Seventh Circuit stated unequivocally that "[n]othing in either the guidelines or the Constitution prevents a judge from taking account of conduct in which the defendant engaged, whether or not an acquittal prevents the imposition of criminal penalties directly on that conduct." *Fonner*, 920 F.2d at 1332. The Seventh Circuit expressed agreement with the other circuits cited by this dissent. *Id.* at 1333 ("[J]udges may consider prior misconduct despite the defendant's acquittal on charges arising out of the misconduct. Six courts of appeals have so held.").

ing parole, Congress implicitly limited the judge's ability to sentence up to the statutory maximum. *Cf.* 28 U.S.C. § 994(m) (suggesting that the Sentencing Reform Act may result in higher sentences by observing that "in many cases, current sentences do not accurately reflect the seriousness of the offense").[2]

We have properly cautioned that absent some good reason to do so, we should resist the creation of intercircuit conflicts. *United States v. Larm*, 824 F.2d 780, 784 (9th Cir.1987), *cert. denied*, 484 U.S. 1078, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988). I see no justification for its creation here— especially in a Sentencing Guidelines case where national uniformity is an apparent goal. *See Department of Health & Human Services v. FLRA*, 894 F.2d 333, 334 n. 1 (9th Cir.1990) (intercircuit conflicts should be avoided, especially where federal law calls for uniformity).

Under the circumstances of this case, we would be far better advised to vacate the sentence and remand without reaching unnecessary issues. Therefore, I concur in part and dissent in part.

**2.** The majority also argues in footnote 12 that its holding does not depend on standard of proof, but merely involves the judicial decision to "define one more category of facts that cannot be used by a district court in imposing sentence." However, the cases cited by the majority provide no support for the remarkable assertion that an appellate court may, on its own initiative, limit the information available to the sentencing judge. Rather, they involve situations where the Guidelines, statute, or the Constitution, bar considering certain facts as the basis for a sentence enhancement.

In *United States v. Enriquez-Munoz*, 906 F.2d 1356 (9th Cir.1990), we held that a sentencing judge may not depart upward from the Guidelines on the grounds that the defendant was motivated by greed. We reasoned that "profit is a primary motivating factor in many if not most types of crimes.... When it [drafted the Guideline] the Commission undoubtedly had in mind the fact that people frequently engage in criminal conduct for profit." *Id.* at 1361–62. For similar reasons, we have held that sentencing judges may not depart on the basis of the defendant's need for psychiatric treatment, or because of the possibility of deportation. *United States v. Doering*, 909 F.2d 392, 395 (9th Cir. 1990) (because Congress directed the Sentencing Commission to consider "rehabilitation" and providing defendants with "needed ... medical care, or other correctional treatment," the need for psychiatric assistance was not a factor overlooked by the Commission); *United States v. Ceja-Hernandez*, 895 F.2d 544, 545 (9th Cir. 1990) ("When setting the offense level for entry after deportation, the Sentencing Commission would certainly have been aware of the practice of promptly deporting aliens after they serve such sentences."). These decisions follow directly from the sentencing statute, which authorizes Guidelines departures only when the case involves atypical circumstances. 18 U.S.C. § 3553(b) (circumstance must be one that was "not adequately taken into consideration."); *see*

*also* U.S.S.G. § 1A4(b), p.s. (judge should depart from Guidelines only in rare, atypical cases); § 5K2.0, p.s. (discussing grounds for departure).

The other two cases cited by the majority also do not establish that we have the authority to limit the information available to sentencing judges. In *United States v. Alvarez–Cardenas*, 902 F.2d 734 (9th Cir.1990), we held that the possibility of deportation could not be the basis for a downward departure, because deportation "does not speak to the offense in question, nor does it speak to the offender's character." *Id.* at 737. This exclusion of irrelevant information finds support both in the sentencing statute, and in the Guidelines. *See* U.S.S.G. § 1B1.4 (directing courts to consider evidence relevant to the "background, character and conduct of the defendant"); 18 U.S.C. § 3661 (same); *see also* 28 U.S.C. § 994(d) & (e) (listing factors irrelevant to sentencing). Finally, in *United States v. Watt*, 910 F.2d 587, 591–92 (9th Cir.1990), we held that a judge must determine whether a defendant has accepted responsibility for his offense without considering the defendant's preplea conduct. We stressed that this interpretation of section 3E1.1 was necessary to avoid an unconstitutional application of the Guidelines. *Id.* at 592.

In contrast to the information excluded in previous cases, the evidence at issue here—Brady's state of mind—is both relevant to Brady's "character and conduct" and a factor which makes this case atypical. *See* U.S.S.G. § 1A4(b), p.s. Nor is there any constitutional impediment to considering this information. Therefore, this case stands in stark contrast to previous Ninth Circuit cases where we have disallowed sentence enhancements when necessary to comply with the Guidelines, statute, or the Constitution. Thus, the majority has no precedent for its created theory that our court can restrict the district court from considering the information at issue.