**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 16-4371

———————

UNITED STATES OF AMERICA

v.

ANDREW ALEXANDER,
                                        Appellant

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 1-14-cr-00240-001
District Judge: The Honorable Yvette Kane

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 25, 2017

Before: SMITH, *Chief Judge*, McKEE, and RESTREPO, *Circuit Judges*

(Opinion Filed:  September 27, 2017)

———————————

OPINION*

———————————

SMITH, *Chief Judge.*

    On December 14, 2016, defendant Andrew Alexander was sentenced to 144

months' imprisonment after a jury found Alexander guilty of conspiracy to distribute

heroin but not guilty of conspiracy to distribute cocaine or crack cocaine. At sentencing,

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

the District Court used a drug-weight calculation that included cocaine and crack cocaine. Alexander challenges his sentence, arguing that the District Court should not have considered acquitted conduct. But as Alexander concedes, it is well established that a district court may consider acquitted conduct at sentencing if the court finds by a preponderance of the evidence that the conduct occurred. We will therefore affirm.

I

On March 13, 2013, law enforcement officers executed a search warrant at the residence of Veronica Rivera. On the first floor, police found a bag of cocaine, a scale, drug packaging materials, baking soda, 86 bags of heroin packaged for distribution, and a bag of raw heroin. In the second-floor bedroom, police found Rivera. Also in the bedroom, police discovered 35 grams of crack cocaine and a bag of cocaine hydrochloride. In a bathroom on the second floor, police found 898 bags of heroin and a pair of pants belonging to Alexander containing handwritten notes and $2,893 in cash. On the third floor, officers observed Alexander and codefendant Andrew Gonzalez breathing heavily as if they had been running. As Alexander told police, after waiving his *Miranda* rights, he was in the second-floor bedroom and then ran up to the third floor when police executed the warrant.

Alexander was indicted on two counts. Count One was conspiracy to distribute a controlled substance. Count Two was possession with intent to distribute a controlled substance.

At trial, law enforcement officers testified to the above, and an expert testified that the handwritten notes were consistent with a drug trafficking ledger. Gonzalez and Rivera

cooperated with the Government in exchange for favorable plea arrangements. Gonzalez testified that Alexander provided the heroin for packaging. Rivera testified that she would drive Alexander to buy drugs, including heroin, marijuana, and cocaine. She further testified that, the day before the raid, she helped Alexander obtain the heroin and cocaine discovered in the house. According to Rivera, when police executed the warrant, Alexander ran to the bathroom with a bag of drugs, flushed it, and then ran upstairs.

The jury found Alexander guilty on Count One. Per a special interrogatory, the jury found Alexander guilty only as to the heroin discovered in the house, not as to the cocaine or crack cocaine. The jury found Alexander not guilty on Count Two.

The Presentence Investigation Report ("PSR") advised that Alexander was a career offender under § 4B1.1 of the United States Sentencing Guidelines. The PSR also advised that Alexander was responsible for all of the controlled substances recovered during the raid.

The District Court found by a preponderance of the evidence that cocaine and crack cocaine discovered in the house were attributable to Alexander. **[App. 10a]** With that drug-weight determination, Alexander's base offense level would be 24 under the Guidelines. According to Alexander, the base offense level counting only the heroin should have been 12. But in either case, the District Court concluded that Alexander is "[t]echnically . . . a career offender," App. 455, elevating the offense level to 32. *See* U.S.S.G. § 4B1.1(b). In criminal history category VI, that would result in a Guidelines range of 210 to 240 months' imprisonment. The District Court varied its sentence below that level, explaining:

3

[C]ompared to other people who are in that career offender category, I can't see that his offense or his likelihood of recidivism or his background are comparable. So I think a sentence in excess of that which he would have received had he not received the . . . career offender bump from 24 to 32 offense level, somewhere in between those two ranges would be appropriate and just under all of the circumstances.

App. 455. The District Court sentenced Alexander to 144 months in prison—66 months below the lower end of the Guidelines range. **[App 456]**

## II

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

The District Court's calculation of drug quantity for sentencing is a factual finding that we review for clear error. *United States v. Sau Hung Yeung*, 241 F.3d 321, 322 (3d Cir. 2001) (citation omitted). We review the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). "[W]e must 'give due deference to the district court's determination that the § 3553(a) factors, on a whole,' justify the sentence." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc) (quoting *Gall*, 552 U.S. at 51).

## III

The District Court sentenced Alexander to a period of incarceration more than five years shorter than the Guidelines range, notwithstanding the Judge's finding that Alexander was responsible for the cocaine and crack cocaine, not just the heroin. The District Court was entitled to make that finding under the law, and the finding did not result in a substantively unreasonable sentence. We will therefore affirm.

4

It is well established that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Ciavarella*, 716 F.3d 705, 735–36 (3d Cir. 2013) (quoting *United States v. Watts,* 519 U.S. 148, 157 (1997)). That is because "the jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict of not guilty." *Watts*, 519 U.S. at 155 (quoting *United States v. Brady*, 928 F.2d 844, 851 (9th Cir. 1991)); *see* 18 U.S.C. § 3661.

Alexander acknowledges that the District Court is entitled to consider acquitted conduct under "current case law," and that "there is a dearth of authority" to the contrary. Appellant Br. 12. He nonetheless asks us to depart from that rule. We are unable to do so because we are bound to follow Supreme Court and circuit precedent. *See* 3d Cir. IOP 9.1. Furthermore, the District Court's preponderance finding was not clearly erroneous. Alexander's own statement to the police established his presence in the second-floor bedroom where the cocaine and crack cocaine were discovered. The evidence supported Alexander's involvement in the drug trade, such as the notes discovered in his pants, as well as his involvement in the destruction of evidence. The officers' observations were corroborated by the cooperating witnesses, including Rivera, whose testimony specifically linked Alexander to cocaine and crack cocaine.

But in any event, the drug quantity was not material to the applicable Guidelines range. The District Court concluded, and Alexander does not dispute on appeal, that Alexander qualified as a career offender, meaning the offense level would be 32

5

regardless of whether cocaine or crack cocaine were included in the calculation. *See* U.S.S.G. § 4B1.1(b). Instead, the drug quantity was relevant to the District Court's calculation of what the Guidelines range *would have been* absent the career-offender enhancement, which the District Court used as a reference point in fashioning an appropriate downward variance.

The District Court made that calculation accurately, and Alexander does not challenge the substantive reasonableness of the District Court's approach. But regardless, the 66-month downward variance was substantively reasonable. The District Court fashioned the variance based on Alexander's "likelihood of recidivism," the nature of "his offense," and a comparison to "other people who are in that career offender category." App. 455. In doing so, the District Court considered the factors enumerated in 18 U.S.C. § 3553(a). "[W]e must 'give due deference to the district court's determination that the § 3553(a) factors, on a whole,' justify the sentence." *Tomko*, 562 F.3d at 568 (quoting *Gall*, 552 U.S. at 51). Such deference is appropriate here.

IV

For the foregoing reasons, we will affirm.