**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rene ALVAREZ–CARDENAS, Defendant–Appellant.**

No. 89–30060.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1989.

Decided April 27, 1990.

As Amended July 27, 1990.

Thomas W. Hillier, II, Federal Public Defender, Seattle, Wash., for defendant-appellant.

Richard A. Jones, Asst. U.S. Attorney, Seattle, Wash., for plaintiff-appellee.

Before CANBY, WIGGINS, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Alvarez–Cardenas ("Alvarez") challenges the district court's acceptance of the probation officer's presentence report which determined that at least 500 grams of cocaine were involved in his offense for the purpose of computing a base offense level. He also claims that the court failed to make specific findings regarding his objections to the presentence report. Finally, he contends that the district court erred in not making a downward departure from the Guidelines for the possibility of deportation. We affirm.

## JURISDICTION

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742(a).

## BACKGROUND FACTS

Erazo–Cassorla ("Erazo") was the subject of an ongoing DEA investigation in the spring of 1988. As part of the investigation, a confidential informant ("informant") arranged to buy 500 grams of cocaine from Erazo for the sum of $13,000. Although Alvarez may not have expected to receive any of the money from the sale, he did become aware of the fact that the sale was to take place. He offered to drive Erazo to the hotel for the stated purpose of making the illegal sale. When they arrived at the hotel, Erazo first went to the hotel room alone. He then returned to the car to get the cocaine and Alvarez. He and Alvarez went to the hotel room where Erazo presented the drugs to the informant to be weighed. A few moments later the police entered the room and arrested both Alvarez and Erazo. The net weight of the cocaine seized from the hotel room was 487.56 grams. An additional 13.3 grams were found in Erazo's car under the passenger seat where Erazo had been sitting.

Alvarez pled guilty to conspiracy with intent to distribute cocaine pursuant to 21 U.S.C. § 846.[1] A presentence report was prepared. The officer preparing the report computed Alvarez' base offense level as 26 based upon a total of 500.86 grams of cocaine.

Alvarez challenged the presentence report prior to sentencing and again at sentencing. His primary attack was on the probation officer's inclusion of the 13.3 grams of cocaine in the initial computation of Alvarez' base offense level. He also challenged the probation officer's failure to make a downward departure based upon the possibility that Alvarez would be deported.

---

1. Section 846 provides:

   Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

The district court found that the base offense level had been properly computed, awarded a two-point reduction for acceptance of responsibility, a four-point reduction for Alvarez' minimal participation in the conspiracy, and denied Alvarez' request for a departure from the Guidelines based upon the possibility of deportation. The court subsequently sentenced Alvarez to a term of 33 months imprisonment and three years supervised release.

## DISCUSSION

### A. *Base Offense Level*

Alvarez contends his sentence must be set aside because the district court erred when it failed to specifically explain its inclusion of the 13.3 grams of cocaine in the computation of his base offense level. We disagree.

Alvarez pled guilty to conspiracy. U.S. S.G. § 2D1.4 provides: "If a defendant is convicted of a conspiracy[2] or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed."

The commentary to § 2D1.4 goes on to explain that, "[i]f the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount." Quite clearly the offense level for a conspiracy is determined by the amount that a defendant conspired to sell and not by the amount ultimately sold. *See United States v. Perez,* 871 F.2d 45, 48 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989) (in a case where some distribution had occurred, the court found that "[u]nder the sentencing guidelines, the amount of the drug being negotiated, even in an uncompleted distribution, shall be used to calculate the total amount in order to determine the base level"). The fact that a little less is distributed does not affect the computation. Indeed, a conspiracy conviction does not turn on the question of whether defendant succeeds in doing all he attempted to do. *See* 21 U.S.C. § 846.

Alvarez concedes in his opening brief to this court that "on August 18, 1988, the informant made arrangements with Mr. Erazo–Cassorla for the delivery of one-half kilogram of cocaine." That concession is proper based upon the statement of the offense set forth in the presentence report. That report indicates that the agreement between Erazo and the informant was for the purchase of one-half kilogram of cocaine, and Alvarez did not contest that fact at the time of sentencing. Furthermore, common sense points in the same direction. We doubt that the informant agreed to purchase 487.56 grams of cocaine, as opposed to a half kilogram, when he struck his bargain with Erazo. Thus, the object of the conspiracy was the distribution of 500 grams of cocaine. Although the district court's findings could have been more specific, it indicated that the reason that all of the cocaine was included in the computation was because of "the conspiracy charged." Therefore we find that regardless of the amount of cocaine actually delivered, Alvarez' base offense level was properly computed on the basis of 500 grams of cocaine.[3]

### B. *Departure for Deportation Reasons*

Alvarez contends that this case should be remanded because the district court did not

---

**2.** At the time of sentencing, U.S.S.G. § 2D1.4 provided: "If a defendant is convicted of participating in an incomplete conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed." The Commission deleted the phrase "participating in an incomplete" and inserted in lieu thereof the word "a" in their November 1, 1989 amendments. The amendment was to clarify the guideline. U.S.S.G.App. C para. 138.

**3.** Contrary to the defendant's claim that this case is controlled by this Circuit's recent holding in *United States v. Restrepo,* 883 F.2d 781 (9th Cir.1989), this is not an aggregation case. In this case, the dispute is over how much cocaine was involved in the conspiracy charge to which the defendant pled guilty, not whether cocaine charged in counts to which the defendant did not plead guilty should be considered in calculating the defendant's sentence. In any event, that opinion was withdrawn on March 5, 1990. 896 F.2d 1228.

737

understand that departure for deportation reasons was permissible. We review de novo the district court's decision of whether departure is legally permissible. *See United States v. Lira–Barroza,* 897 F.2d 981, 984–85 (9th Cir.1990) (step three); *United States v. Nuno Para,* 877 F.2d 1409, 1413 (9th Cir.1989).

The Guidelines fail to indicate whether the Commission considered the possibility of deportation in drafting particular offense levels. U.S.S.G. Ch. 2, Pt. L lists several immigration offenses, but, the section is silent on whether the threat of deportation is a legally permissible ground for departing from the Guidelines. No other section directly addresses that issue.

 Notwithstanding the Guidelines' silence, Chapter Five of the Guidelines illustrates why departure for deportation reasons would be inappropriate. The possibility of deportation does not speak to the offense in question, nor does it speak to the offender's character. It is quite unlike the specific considerations listed in U.S.S.G. § 5K2. On the other hand, deportation is quite similar to the factors set forth in U.S.S.G. § 5H1, which are considered inappropriate grounds for departure in most instances. For example, age (§ 5H1.1), mental and physical condition (§§ 5H1.3 and 5H1.4), education (§ 5H1.2), community ties (§ 5H1.6), and, more directly, race, national origin, and socio-economic status (§ 5H1.10) are not proper grounds for departure. The factors in § 5H1, in large part, speak to status issues that merely describe the defendant as opposed to issues that might be thought to describe characteristics that ought to affect his culpability or the seriousness of the offense. Deportation is similar. A defendant's crime is no less serious, nor is his history of past actions changed because he may be subjected to deportation proceedings at some point in the future. In addition, were we to find that merely being an alien who is subject to possible deportation should affect a sentencing decision, we would be treating aliens differently simply because they are not citizens of this country. We decline to support such an interpretation of the Guidelines.[4]

In the case at hand, it is not clear whether the district judge determined that the possibility of deportation was never a proper ground for departure, or whether she found that the defendant had not submitted sufficient facts to justify departing on that ground. In either event,[5] since we find that the possibility of deportation is not a proper ground for departure, we uphold the decision of the district court.

### CONCLUSION

In this case, the object of the conspiracy was 500 grams of cocaine. We find that the district court's sentence based upon 500 grams was, therefore, correct. In addition, we find that the trial judge did not err when she refused to depart from the Guidelines for the possibility of deportation.

AFFIRMED.

---

**4.** We note that this court has previously decided that deportation is not a proper ground for an upward departure. See *United States v. Ceja–Hernandez,* 895 F.2d 544 (9th Cir.1990).

**5.** If the question here were the district court's discretionary refusal to depart downward we would not have jurisdiction over the issue. *United States v. Morales,* 898 F.2d 99 (9th Cir. 1990).