**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Stacey C. KOON, Defendant–Appellant, Cross–Appellee.**

**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Laurence M. POWELL, Defendant–Appellant, Cross–Appellee.**

Nos. 93–50561, 93–50608, 93–50562 and 93–50609.

United States Court of Appeals, Ninth Circuit.

Jan. 12, 1995.

As Amended Feb. 2, 1995.

Joel Levine, Encino, CA, William J. Kopeny, Santa Ana, CA, for defendants-appellants-cross-appellees.

Steven D. Clymer, Asst. U.S. Atty., Los Angeles, CA, Irv Gornstein, Civ. Rights Div., U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee-cross-appellant.

Before: BROWNING and FLETCHER, Circuit Judges, and FITZGERALD,* District Judge.

**ORDER**

All of the panel members have voted to deny the petitions for rehearing of both defendants.

Judge BROWNING and Judge FLETCHER have voted to reject the suggestions for rehearing en banc of both defendants and Judge FITZGERALD has so recommended.

The full court was advised of the suggestion for rehearing en banc. A judge of the court requested a vote as to whether to take the case en banc. A vote was taken. The request failed to secure the affirmative vote of a majority of the active non-recused members of the court. Judge Trott was recused.

The petitions for rehearing of both defendants are denied and the suggestions for rehearing en banc of both defendants are rejected.

REINHARDT, Circuit Judge, dissenting, with whom PREGERSON, WIGGINS, KOZINSKI, NOONAN, and HAWKINS, Circuit Judges, join, and with whom O'SCANNLAIN, T.G. NELSON, and KLEINFELD, Circuit Judges, join, except as to Part IV:

I dissent from the refusal to rehear this case en banc. While I agree that there is no prejudicial error that requires reversal of the convictions, I believe that the panel seriously erred in vacating the downward departures ordered by Judge Davies. In my opinion, the district court acted well within its discretion in sentencing the defendants to prison terms below the Guidelines range. Sergeant Koon and Officer Powell were first-time offenders. The sentences ordered by Judge Davies were severe indeed. Neither law nor justice requires that they be set aside or that any longer prison terms be imposed.

In stretching to reach its result, the panel casts aside the basic principles that should underlie judicial sentencing, even in the age of the Guidelines. It is only by exhalting the rigid calculations of charts and tables over the judgment of human beings that the panel reaches its conclusion that Judge Davies was too lenient. The panel's encroachment on district court discretion epitomizes the mechanical and inflexible approach to sentencing that so many critics contend the Guidelines themselves represent.[1] Indeed, under the panel's view of the district judge's role in sentencing, district courts would be divested of much of the limited discretion they retain under the Guidelines. As a result, the panel's opinion would make far worse an already unfair and unjust sentencing scheme. It is difficult to believe that the panel truly wishes such an approach to apply to defendants generally.

The panel's unduly restrictive approach to Guidelines sentencing is not the sole vice in its opinion. The opinion is both internally inconsistent and in direct conflict with our prior holdings. As a result, it does not even have the virtue of clarifying our departure jurisprudence. By refusing to use the en banc process, we miss an important opportunity to provide district judges, including Judge Davies on remand, with clear guidance in the area of downward departures and leave them with little choice but to pick and choose among our various irreconcilable statements.

*I.*

The district judge sentenced Koon and Powell to 30–month prison terms. He determined the sentences to be appropriate after departing downward from the Guidelines range by a total of eight points. First, he concluded that a three-point departure was in order because of the presence of an unusu-

---

* Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

1. *See e.g.* Hon. Jose A. Cabranes, *Sentencing Guidelines: A Failed Utopian Experiment*, Nat'l L.J., July 27, 1992 at 2 (Circuit Judge, United States Court of Appeals for the 2d Circuit); Hon. Jack B. Weinstein, *A Trial Judge's Second Impression of the Federal Sentencing Guidelines*, 66 S.Cal.L.Rev. 357 (1992) (U.S. District Judge, Eastern District of New York).

al combination of factors. Second, he concluded that a five-point departure was justified as a result of victim misconduct. The sentence was entirely consistent with the Guidelines.

The Guidelines are clear that a sentencing judge may depart downward from the Guidelines in "atypical" or "unusual" cases. U.S.S.G. Ch. 1, Pt. A, § 4(b) and § 5K2.0. Moreover, we have noted that, except for a small set of *prohibited* factors, " 'the Commission does not intend to limit the kinds of factors, whether or not mentioned elsewhere in the guidelines, that could constitute grounds for departure in an unusual case.' " *United States v. Cook*, 938 F.2d 149, 153 (9th Cir.1991) (quoting U.S.S.G. Ch. 1, Pt. A, § 4(b)). This approach affords the district court a certain degree of flexibility and permits it to act in a more humane and reasonable manner than the Guidelines would otherwise allow.

In its consideration of the three-point combination departure, the panel rejects the relatively enlightened view of departures expressed in both the Guidelines and our prior cases. Judge Davies' based his three-point departure on a combination of three nonprohibited factors. He considered the fact that the officers would be subject to additional punishment, both professionally and in prison. *Koon*, 833 F.Supp. at 785–86. He then noted that because "neither Koon nor Powell are violent, dangerous, or likely to engage in future criminal conduct," there was an absence of any need to protect the public. *Id.* at 786. Finally, he concluded that "a specter of unfairness" marked the federal trial because it followed an earlier unsuccessful state prosecution of the officers. *Id.* at 790. Judge Davies emphasized that he did not base his departure on any one of the discrete factors individually. Instead, he departed only because of the combined presence of three circumstances which "taken together, justify a reduced sentence." *United States v. Koon*, 833 F.Supp. 769, 786 (C.D.Cal.1993).

In considering the three-point departure, the panel, despite including cursory language in its opinion acknowledging the correct rule, applies a method of review that if adopted generally would essentially eliminate departures based on a combination of factors. What the panel did was to examine each factor individually and conclude that each was not "appropriate" to support a departure. The panel failed to make the proper inquiry: whether the factor was *prohibited* by the Guidelines. Instead, it created its own category of *inappropriate* factors, namely those which are not prohibited but which in the panel's opinion do not warrant a departure. The fallacy in the panel's approach is that if the individual factors must each be "appropriate", there would be no need to rely on a combination of factors.

The panel's methodology is at odds with our established precedent. The principle underlying our combination departure cases is rooted in the common sense maxim that the whole is greater than the sum of its parts. For that reason, in reviewing combination cases, we have considered the totality of the circumstances and the interplay between or among the various factors, not whether the individual factors in the mix could in themselves constitute a ground for departure. "[I]t will be how the particular pieces fit together, converge, and influence each other that will lead to the correct decisions." *Cook*, 938 F.2d at 153; *see also United States v. Fairless*, 975 F.2d 664, 669 (9th Cir.1992); *United States v. Floyd*, 945 F.2d 1096 (9th Cir.1991), *corrected*, 956 F.2d 203 (9th Cir. 1992), *and subsequently superseded*, U.S.S.G. § 5H1.12; *United States v. Takai*, 941 F.2d 738, 743 (9th Cir.1991).

The panel at no point considered the interplay of the various factors that Judge Davies considered. Instead, it assessed each of the factors independently and concluded in each instance that it would be inconsistent with the Guidelines to depart downward on the basis of that isolated factor—notwithstanding the fact that *none* of them was a *prohibited* factor. The panel then rejected the combination of factors on the basis that each one constituted an inappropriate basis for departure. No combination departure could survive this divide and conquer method of review.

A clear example of the panel's erroneous approach is found in its discussion of the

vulnerability to prison abuse issue. The panel rejected Judge Davies' consideration of this factor on the ground that "the number of defendants who might qualify for *this departure* is virtually unlimited. . . ." 34 F.3d 1416, 1455 (emphasis added). The term "this departure" is clearly incorrect. There was *no departure* based on the factor that the panel is discussing. The departure at issue was based on a combination of factors that included as only one element the potential for prison abuse. The number of persons who would be affected by the combination of factors would *not* be "virtually unlimited." To the contrary, the number would be small indeed. Thus, the panel's statement as to the number "who might qualify" is just plain wrong. It reaches its mistaken conclusion only because it violated *Cook's* clear command and considered one factor in the combination "abstractly and alone." *Cook,* 938 F.2d at 153. Far more important, however, it is this method of analysis that permeates the panel's opinion and leads it, inevitably, to the wrong result.

The panel's discussion of the *kinds* of factors that Judge Davies considered in his three-point departure gives rise to even more serious problems. Some of our cases have held that only factors that relate to the offender's culpability or to the nature of the offense may justify departure. *See, e.g., United States v. Alvarez-Cardenas,* 902 F.2d 734, 737 (9th Cir.1990). Others have reached precisely the opposite conclusion. *See, e.g., United States v. Crippen,* 961 F.2d 882, 885 (9th Cir.1992). The panel fails to reconcile these irreconcilable positions.

Although the panel's opinion purports to endorse the highly restrictive view set forth in *Alvarez-Cardenas,* in the end it only adds to the chaos in our case law. Following *Alvarez-Cardenas,* the opinion flatly states that "personal and professional consequences" of a conviction "are not appropriate grounds for departing, nor are they appropriately considered as part of a larger complex of factors." 34 F.3d at 1454. However, that statement, while consistent with *Alvarez-Cardenas,* conflicts squarely with *United States v. Mondello,* 927 F.2d 1463, 1469–70 (9th Cir.1991) (stating that the effect of im-

prisonment on the offender's family *is* a permissible basis for departure); *see also* § 5H1.6. Perhaps because it recognized the conflict in our cases, or perhaps because it perceived the gross unfairness of its position, the panel substantially undermines the statement by announcing that it does "not intend to imply that factors that do not speak to" the nature of an offense or culpability "are *never* relevant." 34 F.3d at 1427 n. 3 (emphasis in original). Such conflicting pronouncements within the same opinion cannot help district judges who must administer the Guidelines and make sense of our holdings; nor should they stand as the law of this circuit.

Moreover, the panel's statements that the "personal and professional consequences" of a conviction may not be considered constitutes a square rejection of the holding we announced in *United States v. Aguilar,* 994 F.2d 609, 643–45 (9th Cir.1993) (opinion of O'Scannlain, J.), *op. withdrawn,* 11 F.3d 124 (1993), and *op. replaced on reh'g en banc,* 21 F.3d 1475 (1994). In *Aguilar,* Judge O'Scannlain, in the part of his opinion joined by Judge Hug, explained that district courts have discretion to depart downward from the Guidelines on the basis of the "additional punishment" beyond imprisonment that a conviction may impose. *Id.* at 643.

The panel does not address *Aguilar's* reasoning. While the panel is correct that the original panel opinion in *Aguilar* no longer represents binding precedent, it is surely wrong in concluding that the opinion therefore merits no more than a dismissive half-sentence reference to that fact. 34 F.3d at 1453. The en banc court reheard the case and reversed Aguilar's conviction; accordingly, it did not reach the sentencing question. As a result, the court as a whole never expressed any doubt as to the correctness of Judge O'Scannlain's extensive and perceptive discussion of downward departures. Unlike the panel here, Judge O'Scannlain saw no reason to prohibit sentencing judges from taking into account the practical effects of sentences on the lives of affected individuals. As his opinion made clear, the Guidelines were not intended to treat human beings as impersonal objects whose fate was to be de-

termined solely on the basis of statistical surveys.

Judge O'Scannlain's opinion in *Aguilar* was still binding at the time Judge Davies imposed the sentences on Koon and Powell. Accordingly, he acted properly in basing the sentencing decision on that holding. *Koon,* 833 F.Supp. at 789.[2] At the time of sentencing, our law was clear that "additional punishment" did constitute a proper basis for a downward departure. At a minimum, Judge Davies, as well as other district judges, are entitled to an explanation from the panel as to why we are so abruptly rejecting the *Aguilar* reasoning. So, too, are the defendants who were properly sentenced under the law as it existed at the time of sentencing only to find that on appeal a panel of our court adopted a different view that requires them to be resentenced under a harsher standard.[3] In my opinion, the panel was not justified in peremptorily dismissing a reasoned analysis that bears so directly on the issues in this case and has such drastic consequences for these and other defendants.

## II.

The panel's analysis of the five-point departure, like its analysis of the three-point departure, is premised on a highly restrictive and inflexible reading of the Guidelines and a view hostile to the district court's proper role in sentencing. Judge Davies based his five-point downward departure on his finding that there was victim misconduct. *Koon,* 833 F.Supp. at 787. The panel accepted this finding; accordingly, our analysis must start from that premise, correct or not. The Guidelines specifically provide for downward departures when victim misconduct "contribut[es] significantly to provoking the offense

behavior." § 5K2.10. The panel reversed Judge Davies' departure, holding that, in the context of excessive force cases, an act provokes only if it precipitates an immediate response. 34 F.3d at 1457–58. Here, again, the panel erred.

The applicable policy statement plainly rejects the requirement of a tight nexus between the provocative behavior and the resulting unlawful conduct. The policy statement specifically instructs a district court to consider "*any other relevant conduct* by the victim that substantially contributed to the danger presented." § 5K2.10(e) (emphasis added). Moreover, it suggests that a departure may be warranted if the unlawful behavior follows an "*extended course* of provocation and harassment." *Id.* (emphasis added).

Having erroneously concluded that provocation encompasses only a very limited range of acts, the opinion surmises that in fact Judge Davies must have based the departure on the volatility of the arrest. The panel then proceeds to explain why volatility *never* constitutes a permissible ground for departure in an excessive force case—although it can point to no guideline language that would support such an absolutist view. 34 F.3d at 1458–59. In short, the panel's treatment of the five-point departure is dictated less by the language or spirit of the Guidelines than by hostility to Judge Davies' decision to depart.

## III.

Our cases adopt two contradictory general approaches to downward departures. One approach emphasizes the importance of the district court's discretion to depart and stresses that the guidelines "were not meant

---

**2.** *Aguilar* was not taken en banc until almost a month after Judge Davies filed his opinion.

**3.** The fact that Koon and Powell will now be resentenced under a stricter interpretation of the Guidelines than existed at the time of their initial sentencing may itself constitute a circumstance to be considered at resentencing. While the change in our case law may not be enough in itself to justify a downward departure, the sentencing judge may want to consider the psychological and emotional effect on the defendants of the change in our law. Both defendants were

initially properly sentenced to shorter terms under a rule of law that was valid at the time. There is a certain expectancy that results from such a circumstance. Each defendant now faces a potentially harsher prison term only because the sentencing rules have been changed as the result of the government's appeal. Ironically, the panel's decision may thus have the effect of creating a new "specter of unfairness" which could be considered, consistent with the Guidelines, as one of the factors in a combination justifying departure.

to be a straightjacket for district judges." *Cook,* 938 F.2d at 152; *United States v. Garza–Juarez,* 992 F.2d 896, 911 (9th Cir. 1993). The other takes a narrow view of the sentencing judge's role and severely limits the circumstances that justify departure. *See, e.g., Alvarez–Cardenas,* 902 F.2d at 737. For reasons that still confound me, in this case the panel casts its lot with the restrictive approach.

In choosing to apply a highly limited view of judicial discretion to the case of Koon and Powell, the panel accomplishes little except to undo a perfectly proper sentence, and to treat the defendants in a harsh and unfair manner. Certainly, the panel does nothing to resolve the underlying conflict in our case law. Only an en banc panel can do that in any event. As of today, our rules remain unclear and district judges are left with little guidance. They will simply have to do their best to determine which of our cases—and which of the contradictory statements in the panel's opinion—are to be followed in particular circumstances.

As a result of our refusal to take this case en banc, all Judge Davies will know with certainty on remand is that in order to depart from the Guidelines, he must point to "a legitimate sentencing concern," 34 F.3d at 1453, & 1457, and must consider factors that are consistent with the "structure and purposes of the Guidelines," 34 F.3d at 1452. The conflicting definitions we have given to these virtually empty phrases will leave Judge Davies without specific guidance when he decides whether to depart downwardly once again. If after reexamining all of the facts and circumstances in this most regrettable case, he again concludes that there are factors present that warrant a downward departure from the Guidelines, he will only be able to do his duty as he himself sees it. I hope that this time any exercise of the discretion he is supposed to possess will be examined with greater understanding and solicitude.

Of course, the Supreme Court may yet provide Judge Davies with the guidance that our own court has refused to offer. I note in this regard that the panel's decision squarely conflicts with the considerably more flexible approach adopted by the First Circuit in a comprehensive opinion authored by then-Chief Judge Breyer, a leading member of the initial Sentencing Commission. *See United States v. Rivera,* 994 F.2d 942, 952 (1st Cir. 1993).

*Rivera* holds that the Guidelines do permit departures for personal or professional consequences of conviction that are unusual. *Id.* at 953–56. Moreover, it concludes that apart from a small number of factors "expressly prohibited" (as opposed to "discouraged") by the Guidelines, a district court may depart on the basis of any factor the presence of which is "out of the ordinary" or "unusual." *Id.* at 953. Finally, *Rivera* holds that appellate courts should defer to a district court's determination that a case is "unusual" because such a finding will "*not* involve a 'quintessential legal' interpretation of the words of a guideline, but rather will amount to a judgment about whether the given circumstances, as seen from the district court's unique vantage point, are usual or ordinary, ordinary or not ordinary, and to what extent." *Id.* at 951–52 (emphasis in original). In all three respects, Judge Breyer's approach in *Rivera* is squarely at odds with the inflexible and far stricter approach adopted by the panel in this case.

Given the frequency with which district judges are faced with the type of question that now confronts Judge Davies, and given the conflict within the circuits created by the panel's opinion, perhaps the Supreme Court will deem it important to clarify the extent of the authority that sentencing judges possess to depart downwardly from the Guidelines.

## IV.

As a final point, I note that once again, consistent with our longstanding policy, we refuse to disclose to the public important information regarding an official action of this court. Following an en banc vote, we only tell the public whether or not the en banc call carried. We refuse to disclose whether a decision not to go en banc was made by an equally divided court or whether only a single judge wished to reconsider the panel's decision. We also refuse to disclose

how individual judges cast their ballots.[4] By these rules, we immunize our individual actions from public scrutiny. In my opinion, we are wrong to do so. The public has a right to know how all public officials, including judges, conduct the public's business.

I am aware of the arguments in favor of the rule that we have adopted. It is possible that a vote for or against en banc review will be misconstrued by the public as constituting agreement with or opposition to the merits of the opinion in question even though a judge has cast his ballot on entirely different grounds. However, the fact that a public action may be misunderstood is not a reason for suppressing information. Whatever the costs of disclosure may be, I have no doubt that the costs of secrecy are greater.

I have addressed the problems of non-disclosure of en banc votes before. Previously, I noted that the public is often deprived of crucial information regarding death penalty cases. *See Brewer v. Lewis,* 997 F.2d 550 (9th Cir.1993) (Reinhardt, J., dissenting from denial of en banc review); *Harris v. Vasquez,* 949 F.2d 1497, 1539 (9th Cir.1990). I have also noted that our rule of secrecy is equally indefensible in other cases that involve questions of great public interest. *See Elder v. Holloway,* 984 F.2d 991, 1000 (9th Cir.1993) (Reinhardt, J., dissenting) (disagreeing with the rule precluding disclosure of en banc votes in the context of a civil right case).

Indeed, it is usually the most controversial cases—and the ones that are likely to have the widest impact on the public—that are the subject of the most fiercely debated en banc calls. The votes cast in them are clearly of concern to the public. The people have a right to know both how close the decision is on our en banc votes and how each judge voted on particular calls.

Information about the numerical outcome of the votes is necessary in order for the public, the legal community, and the academic world to assess the en banc process itself. For example, it would surely be of interest to those who study the courts if a series of en banc calls failed even though supported by a majority of the judges who actually voted. With such information, court observers could evaluate the soundness of our voting procedures and suggest reforms. There is another reason that readily comes to mind. There are several vacancies on this court. In fact, one seat has been vacant for well over two years. Disclosure of the numerical outcome of our en banc votes would assist the public in determining the practical impact on our operations of the president's inexplicable failure to perform his constitutional duties expeditiously and to better assess the quality of his performance in office. Could one or two votes have made the difference here? The public is entitled to the information that would answer that question.

The public also has a right to know how individual judges voted. Circuit judges have on occasion been appointed to the Supreme Court—even Ninth Circuit judges. The votes on en banc calls constitute a part of a circuit judge's performance of his judicial duties. The votes may provide an indication of how certain judges would perform on the highest court, particularly with respect to the granting of writs of certiorari. In any event, the public has a right to know how each judge who has life tenure has performed all aspects of his judicial functions. Public scrutiny and accountability are the only checks there are on us, other than impeachment.

Finally, the disclosure of the votes of individual judges might reveal whether there are discernible patterns to the outcome of our en banc calls. It could shed light on whether our votes are consistently based on ideologi-

---

4. Under our rules, all active judges are permitted to vote on en banc calls and a call fails unless a majority of the non-recused judges cast affirmative votes. Our rules do not permit judges who wish to record their votes to do so. Instead, judges may inform the public of their votes only through their participation in dissents from denials of suggestions for rehearing en banc. Many judges prefer not to join in published opinions expressing disagreement with procedural actions of this court, even when those actions determine the outcome of important cases. As I have noted before, our rule ensures that the public knows even less about our en banc process than it does about the Supreme Court's decisions with respect to granting certiorari. *See Harris v. Vasquez,* 949 F.2d at 1539 (explaining that Supreme Court Justices are always permitted to make public their votes on petitions for certiorari).

cal lines and whether there is a pattern in our voting that is related to the party affiliation of the presidents who appointed us. That information would clearly be of interest to students of the judicial system, and, given that so many of our en banc calls involve controversial cases, probably the public and members of the political branches of government as well.

To me, the reasons for disclosure are obvious and irrefutable. I particularly regret that in this case, which is of such public concern, the rules prevent the disclosure of information to which the public is so clearly entitled.

O'SCANNLAIN, Circuit Judge, specially concurring in the dissent, with whom T.G. NELSON and KLEINFELD, Circuit Judges, join:

With the exception of Part IV, I am delighted to concur in Judge Reinhardt's dissent. While desirability of disclosure of en banc voting results is a worthy topic for discussion, I am not convinced this is the appropriate forum.