**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Aram Hanna MASSOUDI, Defendant—
Appellant.**

**No. 00–50712.
D.C. No. CR–99–00040–RT.**

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 8, 2002.*

Decided Dec. 18, 2002.

---

\* This panel unanimously finds this case suitable for decision without oral argument. See   Fed. R.App. P. 34(a)(2).

Before HALL, THOMPSON, and WARDLAW, Circuit Judges.

## MEMORANDUM**

Aram Hanna Massoudi ("appellant") appeals his conviction for (1) conspiring to possess and distribute pseudoephedrine in violation of 21 U.S.C. § 841(d)(2) and § 846; (2) distributing pseudoephedrine in violation of § 841(d)(2); and (3) possessing pseudoephedrine in violation of § 841(d)(2). All three counts required knowledge that the pseudoephedrine would be used to manufacture methamphetamine, a controlled substance.

Massoudi argues that the District Court erred by (1) instructing the jury that appellant could be found guilty if he knew the pseudoephedrine would be used to

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

manufacture methamphetamine or "some other prohibited drug"; (2) finding that there was sufficient evidence to sustain his conviction; and (3) calculating his sentence to include 24.8 kilograms of pseudoephedrine not found in his possession. Finding no merit to these arguments, we affirm appellant's conviction and sentence. Because the parties are familiar with the facts of this case, we recount them here only to the extent necessary to explain our rulings.

## DISCUSSION

### 1) Jury Instructions

The District Court instructed the jury, when explaining the knowledge requirement that attaches to violations of the statutes listed above, that: "It does not matter whether defendant knew that pseudoephedrine was a listed chemical. It is sufficient that defendant knew or had reasonable cause to believe that it would be used to manufacture methamphetamine *or some other prohibited drug*" (emphasis added).

Appellant objected to the emphasized phrase on the ground that it may have suggested to a doubtful juror "that the court believed appellant was engaged in some nefarious drug activity, even if it was not the distribution of pseudoephedrine to make methamphetamine."

■ We have previously held that a defendant charged under 21 U.S.C. § 841, as appellant was, need not know the exact nature of the substance involved for a conviction to stand.[1] *See United States v. Carranza,* 289 F.3d 634, 644 (9th Cir.2002). This argument is therefore unavailing.

### 2) Sufficiency of the Evidence

Appellant contends that the evidence produced at trial was insufficient to sustain his convictions. We can reverse on this ground only if, after viewing the evidence in the light most favorable to the government, no rational trier of fact could have found appellant guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Massoudi asserts that there is "no evidence whatsoever" to support the jury's conclusion that he engaged in a conspiracy with his co-defendant, Maher Khezam. We disagree.

The evidence reveals that (1) Massoudi discussed "cooking" and "breaking down" the pseudoephedrine with an undercover police officer; (2) Massoudi conferred with Khezam before making drug transactions with the undercover police officer; and (3) both Massoudi and Khezam became visibly agitated when they discovered a surveillance vehicle monitoring the transaction.

We also reject appellant's argument that his conspiracy conviction cannot stand because his co-defendant was acquitted. *See United States v. Powell,* 469 U.S. 57, 68–69, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (holding that the inconsistency of a jury verdict is not grounds for review).

■ Appellant also asserts that the evidence was insufficient to sustain his convictions for possessing and distributing pseudoephedrine. Yet the government presented substantial evidence to the contrary, including Massoudi's statements to the undercover officer, i.e., the references to cooking the pseudoephedrine and breaking it down. The evidence also indicated that (1) the second, more substantial sale

---

1. 21 U.S.C. § 841(d)(2), recodified as 21 U.S.C. § 841(c)(2), imposes criminal liability upon "[a]ny person who knowingly or intentionally ... possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance."

was set up through pager calls; (2) both transactions involved large amounts of cash with no receipts; (3) Massoudi informed the undercover officer that he preferred to transfer the boxes outside the convenience store but the cash inside; and (4) appellant complained to the officer that they took "the chances" while those above them made more money.

Viewing this evidence in the light most favorable to the government, the jury was entitled to come to the conclusion it did.

### 3) *Sentencing Calculation*

Appellant claimed that the 24.8 kilograms of pseudoephedrine found in the storage locker after his arrest should not have been used to calculate his base offense level because it was not in his possession and its presence was not reasonably foreseeable by him.

"[T]he offense level for a conspiracy is determined by the amount [of drugs] that a defendant conspired to sell and not by the amount ultimately sold." *United States v. Alvarez–Cardenas,* 902 F.2d 734, 736 (9th Cir.1990), *quoting United States v. Perez,* 871 F.2d 45, 48 (6th Cir.1989), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989).

The jury found appellant guilty of possessing pseudoephedrine on the date of the second transaction. In addition, the District Court attributed all the pseudoephedrine found in the locker to appellant as part of the conspiracy, and as relevant conduct under § 1B1.3 of the sentencing guidelines.

According to the evidence, Massoudi agreed to sell 40 boxes of pseudoephedrine to the undercover officer; they negotiated a price and discussed the manner in which the sale would take place; appellant paged the officer to execute the sale; the officer showed appellant the cash; appellant told

the officer he was profiting $3,000 from the transaction; and finally, when the transaction soured, the police seized the boxes of pseudoephedrine from the storage locker from which appellant's co-defendant had been making his deliveries.

In addition, appellant admitted in his post-arrest statement that he had previously sold pseudoephedrine; officers observed appellant's co-defendant transport the three boxes sold to the undercover officer during the first sale to the convenience store; and Massoudi himself negotiated the second sale, suggesting he must have known that his co-defendant could retrieve at least 40 boxes of pseudoephedrine.

Because this evidence is uncontradicted, the District Court did not clearly err in calculating Massoudi's sentence to include the 24.8 kilograms of pseudoephedrine found in the storage locker.

Appellant's conviction and sentence are AFFIRMED.