**UNITED STATES of America,**
**Plaintiff—Appellant,**

v.

**Jose ARROYO MOJICA, Defendant—**
**Appellee.**

No. 04–30190, CR–03–02021–EFS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 2005.

Decided March 29, 2005.

James P. Hagarty, Esq., USYA–Office of the U.S. Attorney, Yakima, WA, for Plaintiff–Appellant.

George Paul Trejo, Jr., Esq., Yakima, WA, for Defendant–Appellee.

Before O'SCANNLAIN, LEAVY, and BEA, Circuit Judges.

MEMORANDUM *

The Government appeals Defendant–Appellee Jose Arroyo Mojica's sentence. We have jurisdiction pursuant to 18 U.S.C. § 3742(b) and 28 U.S.C. § 1291, and vacate Mojica's sentence and remand to the district court for resentencing. Because the parties are familiar with the factual and procedural history, we do not repeat it here except to the extent necessary for our disposition.

I.

■ The Government argues first that the district court erred in granting a four-level downward departure for cultural assimilation and a two-level downward departure purportedly for a combination of other factors. Prior to *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Sentencing Guidelines were mandatory and downward departures were reviewed *de novo*. 18 U.S.C. §§ 3553(b)(1), 3742(e) (2004). In *Booker*, however, the Supreme Court rendered the Sentencing Guidelines advisory and held the appropriate standard of review to be review for "unreasonable[ness]," but nevertheless held that in sentencing defendants district courts must "take account" of the Sentencing Guidelines along with certain other enumerated factors. *Booker*, —— U.S. at —— –——, 125 S.Ct. at 764–765. We conclude that the district court failed to "take account" properly of the Sentencing Guidelines with respect to the downward departures that the Government appeals.

In *United States v. Lipman*, 133 F.3d 726 (9th Cir.1998), we recognized cultural assimilation as a proper ground for downward departure where the cultural assimi-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

lation "speak[s]" to the defendant's offense or character, as it may where the defendant is charged with illegal reentry and the "defendant's unusual cultural ties to the United States—rather than ordinary economic incentives—provided the motivation for the defendant's illegal reentry or continued presence in the United States." *Id.* at 731. We were careful to distinguish this, however, from a downward departure solely because a defendant faces future deportation, explaining that " '[t]he possibility of deportation does not speak to the offense in question, nor does it speak to the offender's character....' " *Id.* at 730–31 (quoting *United States v. Alvarez–Cardenas,* 902 F.2d 734, 737 (9th Cir.1990). Thus, in *Alvarez–Cardenas,* the defendant pleaded guilty to conspiracy with the intent to distribute cocaine and, in sentencing, sought a downward departure based upon the possibility of deportation. 902 F.2d at 735. The district court denied the request and we affirmed, holding that departure for "deportation reasons" would be "inappropriate" because the possibility of deportation does not speak to the offender's character, culpability or history nor to the seriousness of the offense, and because departing on the basis of the possibility of deportation would result in the differential treatment of aliens. *Id.* at 736–37.

Here, the district court appears to have relied on this prohibited ground in justifying its four-level downward departure. The district court first noted that it is only "by sheer misfortune" that Mojica is not a United States citizen and that he "should have been" one. ER 106. As the district court explained, "it has gone on for generations, but it always happens that some family that's [sic] immigrated to the United States at an early age brings a long [sic] an infant from whatever country they have come from and then at some point

fails to take appropriate steps to become a naturalized citizen." ER 106–07. As a result, explained the district court, Mojica is subject to "the loss of a live [sic] in America," by which the district court presumably meant deportation and which the district court described as "the toughest penalty of all." ER 106. Indeed, the district court characterized this as a "terrible injustice," noting that Mojica is "without any contact whatsoever in [sic] the country of his birth," "has no one to go to, and probably some great difficulty in making the adjustment to a country with which he is completely unfamiliar." ER 106–07.

The district court appears to have relied on this prohibited ground again in justifying its two-level downward departure. After granting the four-level downward departure for cultural assimilation, the district court denied departures on several other grounds, including age and stature, extraordinary family circumstances, governmental misconduct in charging, minor participation, and disparate treatment due to alienage. ER 108–10. But having done that, the district court then granted an additional two-level downward departure for a "combination of factors under all the circumstances." ER 110. The district court gave no further explanation at the sentencing hearing other than that it was "justified." ER 110. In the judgment, however, the district court explained the two-level downward departure on account of the fact that "the applicable guideline range does not take into account the Defendant's deportable alien status" and that "the Defendant has shown that his individual circumstances will make deportation extraordinarily harsh since he will be sent to Mexico, a country he does not know[,] and will be separated from his family and friends." ER 132, 141.[1]

---

**1.** The district court also cited the fact that "the Defendant has *not* made the requisite

Thus, we conclude that the district court justified the two departures the Government appeals on improper grounds and, thus, that the district court failed to "take account" properly of the Sentencing Guidelines. *Booker,* — U.S. at —, 125 S.Ct. at 764. We therefore vacate Mojica's sentence and remand to the district court for resentencing, but offer no opinion as to how the district court may resentence Mojica under the now advisory Sentencing Guidelines.

## II.

■ Pursuant to the so-called "safety-valve" provision, a defendant convicted of an offense in violation of 21 U.S.C. § 841, as was Mojica here, can be sentenced to a term less than the statutory minimum if the sentencing court finds, in addition to four other factors, that the defendant does not have more than one criminal history point. 18 U.S.C. § 3553(f)(1). At the time of his sentencing, Mojica previously had been convicted of residential burglary and of an offense described in the presentence report as "No Valid Operator's License." ER 18–21. On the basis of these two convictions, the presentence report recommended that the defendant be charged with two criminal history points (ER 21), which would have disqualified Mojica for relief under the safety-valve provision. The district court concluded, however, that Mojica's waiver of counsel prior to his plea of guilty to the charge of "No Valid Operator's License" was not valid, and thus did not charge Mojica with the criminal history point for that conviction. ER 83–88, 132–33, 141–42. As a result, Mojica had only one criminal history point. The district court held further that the remaining four factors of the safety-valve provision

had been satisfied and, thus, invoked it. ER 88, 132, 141.

The Government argues on appeal that the district court erred in holding that Mojica did not knowingly and intelligently waive his right to counsel prior to pleading guilty to the charge of "No Valid Operator's License." We review *de novo* a district court's determination whether a prior conviction was constitutionally infirm and, thus, whether it may be used in calculating a defendant's criminal history score, *United States v. Allen,* 153 F.3d 1037, 1040 (9th Cir.1998), and we conclude that the district court erred.

An uncounseled defendant's waiver of his Sixth Amendment right to counsel prior to pleading guilty is knowing and intelligent and, thus, valid if the trial court informs the defendant "[1] of the nature of the charges against him, [2] of his right to be counseled regarding his plea, and [3] of the range of allowable punishments attendant upon the entry of a guilty plea." *Iowa v. Tovar,* 541 U.S. 77, 124 S.Ct. 1379, 1383, 158 L.Ed.2d 209 (2004). However, when a defendant asserts a constitutional challenge to a prior conviction for purposes of calculating his criminal history, it is the defendant's burden to prove by a preponderance of the evidence that the prior conviction is constitutionally infirm. *Allen,* 153 F.3d at 1041. In the absence of such evidence, a waiver of counsel is presumed to be valid. *Id.*

Here, Mojica makes a number of allegations that the trial court failed properly to advise him prior to his guilty plea to the charge of "No Valid Operator's License," but he has submitted no evidence. Rather, Mojica argues that the Government failed to object to his "offer of a proffer" to the district court, and, thus, has waived its ability to object on these grounds. But

---

showing that he will face harsher conditions of confinement" (ER 132, 141 (emphasis add-

ed)), but it is not apparent how that would support the two-level downward departure.

the Government argued both in its sentencing brief and at the sentencing hearing that Mojica bore the burden of proof and had not submitted any evidence. ER 74–75, 84. In the absence of any evidence that Mojica did not validly waive his right to counsel, Mojica failed to overcome the presumption that his waiver was valid.

VACATED and REMANDED for re-sentencing.