**UNITED STATES of America, Plaintiff,**

v.

**Jimmy R. JONES, Defendant.**

**No. 5:92CR0422.**

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 31, 1994.

---

**3.** The Court leaves to the defendants the question who should pay for the children's education.

Phillip J. Tripi, Cleveland, OH, for the U.S.

Donald Krosin, Federal Public Defender's Office, Cleveland, OH, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

On May 12, 1994, this Court found Jones guilty on both counts of a two count indictment, charging him with violations of 26 U.S.C. §§ 5861(d) and 5871 (unlawful possession of a destructive device) and 26 U.S.C. §§ 5861(f) and 5871 (unlawful manufacture of a destructive device). The probation office submitted a pre-sentence report ("PSR"), to which both the government and Jones object. At a hearing on August 24 and 25, 1994, this Court imposed a 120 month sentence to run concurrently with the state sentence Jones is currently serving. This Court now memorializes its reasoning in imposing that sentence.

## I.

Most of the facts relevant to sentencing are set out in this Court's *Findings of Fact and Conclusions of Law,* and need not be fully restated here. In brief, this Court found that Jones, in August 1991, constructed an incendiary bomb which he placed on his wife's 1988 Ford Thunderbird. At the time, Jones was an Ohio State Trooper. Essentially, the bomb consisted of a model rocket engine placed in the car's fuel fill tank and connected to the car's electrical system. The Court found that the device was designed to ignite the fuel vapor in the gasoline tank when the car's lights were turned on. The Court made no finding regarding Jones' intent or motives, except that Jones stated in his prior statement under oath that he placed the rocket engine in the car "in hopes that it would shoot down into the gas tank and maybe cause a small fire or something." *Findings of Fact and Conclusions of Law,* at 12. The Court admitted no evidence concerning the death of Jones' wife, Karen, except to explain how Jones and the 1988 Ford Thunderbird came to be in police custody and subject to search.

Certain additional facts were adduced at the sentencing hearing. Karen Jones was the owner and the primary driver of the 1988 Ford Thunderbird. Karen's three young children were frequent passengers in the automobile.

Jones was the primary beneficiary of three policies insuring his wife's life; these policies were valued at $104,000.00. Immediately after Karen Jones' death, Jones called a friend of Karen's in Michigan and asked her to contact the insurance adjuster. Jones relied on this friend because the insurance adjuster was located in Michigan, where Karen had obtained the insurance. It is unclear whether Jones ever actually made a claim under any of these policies. In any event, he never received any proceeds from the policies.

At the time Jones manufactured the bomb, he was engaged in an adulterous relationship with Colleen Sullivan. Karen learned of this relationship and confronted Jones regarding it. Karen was stabbed to death within days of this confrontation.

Jones was convicted in state court of manslaughter for the stabbing death of his wife, which occurred less than a month after Jones constructed the car bomb. He is currently serving a 10 to 25 year sentence.

## II.

Fixing the appropriate sentence in this case involves a determination of the appropriate base offense level, consideration of any enhancements that might apply, and a consideration of any other limits on the sentencing options available to the Court. Each of these issues is addressed *seriatim.* There is no dispute that the 1990 Sentencing Guidelines apply to this case.

A. As an initial matter, these offenses are to be grouped under U.S.S.G. § 3D1.2(a), because the two counts involve the same victim and the same act or transaction. That is, Jones possessed and manufactured the bomb at the same time; it would be more than merely artificial and formalistic to treat these as separate acts. *See Findings of Fact and Conclusions of Law,* at 18 ("if Jones manufactured [the] incendiary bomb, then he possessed it, at least until he completed its manufacture"). Because both counts have the same offense level (see below), the offense level for the group is the same as the one that would apply to either count.

The guideline provision applicable to violations of 26 U.S.C. §§ 5861(d) and 5861(f) is U.S.S.G. § 2K2.1. The base offense level is 18. However, § 2K2.1(c)(2) provides that "if the defendant used or possessed the firearm in connection with commission or attempted commission of another offense," then § 2X1.1 should be applied in respect to that other offense, if the offense level is greater than the one that would apply absent the cross-reference. Where the connected offense is attempted murder, § 2X1.1 in turn cross-references § 2A2.1(a)(1). In such a case, the base offense level becomes 28.

Application of § 2K2.1(c)(2) requires admitting evidence of Jones' intent to kill his wife in the face of a state jury determination that Jones' conduct did not constitute premeditated murder, and to consider that evi-

578

dence under a substantially less stringent burden of proof than that applicable at the prior state trial. This Court finds that it agrees with the Ninth Circuit in that "[w]e would pervert our system of justice if we allowed a defendant to suffer punishment for a criminal charge for which he or she was acquitted." *United States v. Brady,* 928 F.2d 844, 851 (9th Cir.1991). The *Brady* court noted that, while the guidelines allow a sentencing court to consider factors that are not elements of the offense of conviction,

> it does not follow that the Guidelines permit a court to reconsider facts during sentencing that have been rejected by a jury's not guilty verdict. Otherwise, any time a judge disagreed with the jury's verdict, the judge could 'reconsider' critical elements of the offense ... in effect punishing the defendant for an offense for which he or she had been acquitted.

*Id.,* at 851–852.

Although the *Brady* court did not specifically reach constitutional issues, relying instead on its reading of the Guidelines themselves, in this Court's view applying § 2K2.1(c)(2) to allow reconsideration of evidence on a lesser standard of proof than that that was rejected by a jury implicates the rights to trial by jury and due process.[1] The right to a trial by jury means little if a sentencing judge can effectively veto the jury's acquittal on one charge and sentence the defendant as though he had been convicted of that charge. This is precisely what § 2K2.1(c)(2) commands.

The Sixth Circuit, however, has held this practice to be both intended by § 2K2.1(c)(2) and constitutional. *United States v. Milton,* 27 F.3d 203 (6th Cir.1994) (expressly rejecting reasoning of *United States v. Brady* ); *see also United States v. McGhee,* 882 F.2d 1095 (6th Cir.1989) (upholding analogous enhancement provision against due process and seventh amendment attacks). This Court is, of course, bound by these prior Sixth Circuit decisions. Consequently, this Court is compelled to apply § 2K2.1(c)(2) to the extent it is applicable to the facts of this case.

Here, Jones' prior testimony is that he placed the model rocket engines on his wife's car "in hopes that it would shoot down into the gas tank and maybe cause a small fire or something." *Findings of Fact and Conclusions of Law,* at 12. Thus, according to Jones, his intent was to frighten, rather than to kill, his wife. This Court cannot credit Jones' testimony. In light of the fact that the bomb was designed to detonate only when the car's lights were turned on (thus requiring that the car be occupied), and in light of the fact that the bomb was designed so that it could cause a violent reaction if the proper air to fuel ratio were present, this Court must infer an intent to cause the death of any occupant of the car. Coupled with evidence of Jones' motive adduced during the sentencing hearing, this Court finds by a preponderance of the evidence that Jones manufactured and possessed the bomb in connection with an attempt to kill his wife, Karen.

The base offense level is, therefore, 28.

B. The government seeks to enhance Jones' penalty through several Guidelines provisions. Each of these is discussed in turn below.

1. *Pecuniary Motivation*

■ The government seeks a four point enhancement for pecuniary motivation, pursuant to § 2A2.1(b)(2). That section provides for enhancement if the attempted murder involved the receipt of anything of pecuniary value for undertaking the murder. The government maintains that Jones attempted to receive insurance proceeds for the loss of his car and his wife's death, and that Jones would be relieved of the responsibility of paying alimony if he were successful in killing his wife.

The government's suggestion that Jones was motivated by a desire to avoid the necessity of alimony payments is speculative, at best. The only evidence to this effect was a statement made to Ray Neuhauser by Mauricia Constantino, Colleen Sullivan's sister, to

1. The *Brady* court did not rest its ruling on the lesser burden of proof the government was required to satisfy at the sentencing hearing.

the effect that Sullivan told Constantino that Jones had told Sullivan he wanted to blow up his wife's car because he could not afford a divorce. Neuhauser's testimony regarding this statement constitutes triple hearsay. Although admissible in this context, this Court does not credit it, since no mechanism to test the reliability of each link in this chain of out of court statements is available. Neither Sullivan nor Constantino offered any testimony in this case. Even if this Court were to credit this testimony, the connection between Jones' receipt of a thing of value through avoiding alimony payments and his attempt to kill his wife is highly attenuated.

The government also argues that Jones was motivated by a desire to receive life insurance proceeds. Karen carried insurance worth $104,000.00. The day after Karen's death, Jones called Sheryl Andrews, in Michigan, and asked her to get in contact with Karen's insurance adjuster. Jones reiterated this request later that same day. However, there is no evidence that Jones ever actually made a claim for insurance proceeds, nor has he received any. In addition, Jones' attempt to collect insurance proceeds, standing alone, does not prove that Jones' attempt to kill his wife was undertaken with this goal in mind. This Court does not find by a preponderance of the evidence that Jones was motivated by a desire to collect insurance proceeds.

Consequently, on the facts of this case, an enhancement for pecuniary motivation is inappropriate.

### 2. Vulnerable Victims

The government and the PSR seek to apply an enhancement for vulnerable victims pursuant to § 3A1.1 Section 3A1.1 provides that the enhancement is appropriate "if the defendant knew or should have known that a victim of the offense was unusually vulnerable ..." The 1988 Ford Thunderbird on which Jones placed the model rocket engine was owned by Karen Jones. Karen's three young children were frequent passengers in the car. As previously noted, the bomb was designed to detonate only when the car's operator turned on the lights; thus, the

bomb was designed to explode only when the car was occupied.

Jones should have known that Karen's children could be victims of the offense. Jones was at least negligent concerning the possibility that the children might be travelling in the car at the time the bomb was detonated. Since the government need only show that Jones should have known that the children could be victims, the enhancement is applicable in light of Jones' negligence.

### 3. Abuse of Position of Trust or Use of Special Skill

Both the government and the PSR seek a two point enhancement pursuant to § 3B1.3 on either of two grounds: Jones, a police officer, abused his position of trust when he committed an offense; or, Jones used a special skill in construction of the car bomb. Jones objects.

As to abuse of a position of trust, the relevant application note states: "The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to embezzlement by an ordinary bank teller." U.S.S.G. § 3B1.3, application note 1. This section "was not intended to apply to every case in which the defendant held a position of trust bearing some remote connection with the defendant's crime." United States v. Duerson, 25 F.3d 376, 383 (6th Cir.1994) (citation omitted). Nothing suggests that Jones' status as a state police trooper in any way facilitated the commission of his offense. Although at least one jurisdiction has found that the commission of any crime by a police officer violates public trust[2], the Sixth Circuit has not so held. Consequently, an enhancement for abuse of a position of trust is not appropriate.

As for use of a special skill, the relevant application note states: " 'Special skill' refers to a skill not possessed by members of the general public and usually requiring substan-

**2.** See United States v. Pedersen, 3 F.3d 1468, 1470 (11th Cir.1993).

*tial education, training or licensing.* Examples would include pilots, lawyers, doctors, accountants, chemists, and *demolition experts.*" U.S.S.G. § 3B1.3, *application note 2* (emphasis added). Here, the government argues that Jones had two sources of special skill. First, he received expertise in demolitions through reading *The Anarchist's Cookbook* and *The Anarchist's Handbook.* Second, as a state trooper, he had expertise in automobile accidents.

As to the first, simply reading these two publicly available publications does not constitute "special skill" as contemplated in the application note. The note specifically refers to demolitions experts, and refers to substantial training or education. There is no evidence that Jones received substantial education in demolitions.

As to the second, the government offers nothing to suggest that Jones' expertise in the area of automobile accidents had anything whatever to do with his construction or possession of a car bomb. Absent such a connection, Jones cannot be said to have "used" this special skill in committing the offenses of which he has been convicted in this Court.

Thus, enhancement under § 3B1.3 is not proper.

### 4. *Extreme Conduct*

█ The government seeks a four point upward departure for Jones' extreme conduct pursuant to § 5K2.8. That section provides that "if the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence ... Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." U.S.S.G. § 5K2.8. The government argues that placing a bomb, which could kill whoever happened to be near the car at the time, constitutes extreme conduct. In support of its position, the government relies on *United States v. Kikumura,* 706 F.Supp. 331 (D.N.J.1989), *aff'd* 918 F.2d 1084 (3d Cir. 1990). The defendant there, however, was a terrorist who plotted to kill scores of people with his bombs.

The plain language of § 5K2.8 leaves the decision whether to depart upward on this basis to the Court's discretion. In this case, the enhancement is not appropriate. Although Jones manufactured the incendiary device in connection with an attempt to kill his wife, his conduct does not seem more cruel or extreme than that normally involved in attempted murder. To the extent the conduct is more extreme than that normally involved in the possession or manufacture of an illegal firearm, the cross-reference to § 2K2.1(c)(2) accounts for the aggravated circumstances of this offense. The guidelines adequately reflect the seriousness of the offense without departure.

█ C. The statutory maximum for violations of 26 U.S.C. §§ 5861(d) and (f) is ten years incarceration and a $250,000.00 fine. The government seeks a term of imprisonment substantially in excess of this amount, but does not offer authority for the proposition that the guideline range can control over the statutory maximum. The guidelines themselves, in fact, provide to the contrary. U.S.S.G. § 5G1.1(a) (where statutory maximum is less than guideline sentence, statutory maximum is imposed as guideline sentence).

The government argues that the maximum is 20 years; *i.e.,* 10 years for each offense. To reach this conclusion, the government maintains that the sentence imposed on Count II should run consecutively to that imposed on Count I; thus, the two ten-year maximum sentences can be imposed consecutively. However, this argument is wholly baseless where, as here, the two counts must be grouped under § 3D1.2(a) because the conduct underlying the counts constituted the same act or transaction.

Consequently, the maximum sentence is ten years, or 120 months.

█ D. Unlike the current edition, the 1990 guidelines did not contain a provision expressly providing that a concurrent sentence is to be imposed where the prior conduct for which the defendant is serving a term of imprisonment has been fully taken into account in the sentence being imposed. However, the decision whether to impose a

consecutive or concurrent sentence where, as here, the defendant is serving an unexpired term of imprisonment, but did not commit the offense while serving that term of imprisonment, is within the court's discretion. U.S.S.G. § 5G1.3, *commentary;* and 18 U.S.C. § 3584(a). In making this determination, the court is to look to such matters as the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, and the need to deter future offenses. 18 U.S.C. § 3553.

Here, the government has demonstrated by a preponderance of the evidence that Jones constructed the bomb as part of an overall scheme to kill his wife. Jones' attempt to kill his wife with the car bomb was part of the same course of conduct that ultimately came to fruition when his wife was killed. Jones' state sentence for successfully killing his wife takes his attempt to do so into account. Although the government may argue that the bombing constitutes one attempt, while the stabbing constitutes a second attempt, it is unlawful to impose a consecutive sentence for attempt and for another offense that was the sole object of the offense. 18 U.S.C. § 3586. Even if that were not the case, Jones' possession and manufacture of the bomb, being part of the course of conduct that led to his wife's death, was accounted for by his state court sentence.

Therefore, this Court exercises its discretion to impose sentence concurrently with the sentence that Jones is currently serving for manslaughter.

### III.

The base offense level applicable to Jones' offense, after application of the cross-reference contained in § 2K2.1(c)(2), is 28. A two point enhancement for the vulnerability of Jones' victims is appropriate, bringing the adjusted offense level to 30. The parties do not dispute that Jones' criminal history category is II. The Guideline range, taking into account the 120 month statutory maximum, is 108 to 120 months.

This Court sentences Jones to 120 months incarceration. The sentence shall run concurrently with the sentence that Jones is currently serving for manslaughter. Jones should be given credit for time served in federal custody.

IT IS SO ORDERED.