**UNITED STATES of America,**

v.

**David KWONG, Defendant.**

**Nos. CR 91–928 (RJD), CR 88–266.**

United States District Court,
E.D. New York.

Feb. 14, 1995.

Leslie Caldwell, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY, for U.S.

Lawrence H. Schoenbach, New York City, for defendant.

### SENTENCING MEMORANDUM

DEARIE, District Judge.

On January 26, 1990, David Kwong sent an Assistant United States Attorney in the Eastern District of New York a booby-trapped briefcase. The device was rigged so that when opened, a sawed-off Marlin 70–P rifle would fire a single .22 caliber, Stinger, high-velocity, high-power round. Fortunately for the Assistant United States Attorney, a NYPD detective assigned to the Drug Enforcement Agent and a DEA special agent were present in the office when the package arrived. After being alerted by Ms. Palmer's expression of surprise at the receipt of the package, the officers moved the assistant away from the package and examined it carefully.

Detective Robert Hom opened the lid of the attache case slightly and, standing to the side, peered inside. He discovered what appeared to be a triggering mechanism. He carefully disengaged the leader from the weapon's trigger to the mechanism itself. The attache was then safely opened revealing its potentially deadly contents.

These startling events led to an extensive investigation that almost immediately centered on another man—Chan Wing Yeung

("Chan"). The investigators, however, quickly became suspicious of the ease with which evidence against Chan was uncovered and before long, the reliable evidence pointed more and more toward the defendant David Kwong. In the end, substantial evidence indicated that Kwong had indeed orchestrated the potentially deadly scenario and that he sought to frame the initial suspect so that he could assist the investigating agents and thereby invite a more lenient sentence in his pending criminal case.

At the first trial in July 1992, Kwong was convicted and sentenced to 293 months incarceration for both the attempted murder of the assistant and for the earlier pending case on which Kwong had never been sentenced. The Court of Appeals reversed the conviction, *United States v. Kwong*, 14 F.3d 189 (2d Cir.1994), for reasons unrelated to the sentencing issues now before the Court.

This memorandum addresses the issues related to the sentencing of David Kwong.

## DISCUSSION [1]

Several guideline issues are presented in this sentencing. Not only is the base offense level and the criminal history category disputed, but the application of various enhancements as well as the appropriateness of downward and upward departures are at issue. Additionally, the process is further complicated by possible *ex post facto* considerations.

*Base Offense Level*

To determine the base level offense, the Court must look to the guideline which is "most applicable to the offense of conviction." U.S.S.G. § 1B1.2(a). There can be little dispute that guideline 2A2.1 ("Assault With Intent to Commit Murder; Attempted Murder") is the correct guideline.[2] Guideline 2A2.1 now provides two different base offense levels. The principle dispute centers on which of the two base offense levels listed in guideline 2A2.1 applies.

Guideline 2A2.1 specifies that a base offense level of 28 applies "if the object of the offense would have constituted first degree murder." U.S.S.G. § 2A2.1(a)(1). Otherwise, guideline 2A2.1 notes, a base offense level of 22 applies. U.S.S.G. § 2A2.1(a)(2). The evidence shows Kwong attempted to kill Assistant United States Attorney Catherine Palmer with premeditation and malice aforethought. Therefore, on the face of it, a base offense level of 28 is warranted.

■ Kwong argues that because the indictment did not specifically charge him with attempted first degree murder, the use of a base offense level of 28 is incorrect. The indictment charges:

On or about January 29, 1990, within the Eastern District of New York, the defendant DAVID KWONG, also known as "Zura Kwong", "Ken Chan", and "George Kwong", did knowingly and intentionally attempt to kill Catherine E. Palmer, an Assistant United States Attorney for the Eastern District of New York.

(Title 18, United States Code, Sections 1114 and 3551 *et seq.*).[3]

No specific allegations of malice aforethought or premeditation, two elements of first de-

---

**1.** A more complete statement of the facts can be found in *United States v. Kwong*, 14 F.3d 189 (2d Cir.1994).

**2.** Kwong did at one point question the applicability of guideline 2A2.1, arguing instead that the appropriate guideline to apply would be one for "threatening communications," U.S.S.G. § 2A6.1. Kwong's argument fails for several reasons. First, courts are directed to look at the indictment, not the specific facts of the case, to determine which guideline to apply. U.S.S.G. § 1B1.2(a). Second, certainly the facts of the case support the application of guideline 2A2.1. Third, even if the Court were inclined to accept defendant's extraordinary interpretation, a more appropriate guideline than the one suggested by

the defendant is guideline 2K3.2 ("Feloniously Mailing Injurious Articles"). This section, however, says to apply guideline 2X1.1, which in turn says to apply the appropriate guideline for the substantive offense. Even under this construction, there can be no question that the substantive offense is attempted murder, not the far less serious offense suggested by the defendant.

**3.** Title 18, United States Code, Section 1114 provides in pertinent part:

Whoever ... attempts to kill ... any Assistant United States Attorney ... engaged in or on account of the performance of [her] official duties [is guilty of a crime].

gree murder, *see* 18 U.S.C. § 1111, are made in the indictment.

The fact that the indictment makes no mention of those elements is not dispositive for determining which base offense level within guideline section 2A2.1 applies. Guideline 1B1.2 directs sentencing courts to look to the indictment for determining which *guideline* is "most applicable to the offense of conviction." It is readily apparent that the guideline for attempted murder is the most appropriate guideline when the indictment charges that very crime.

■ Once the Court has determined that guideline 2A2.1 applies, the Court is directed to employ the relevant conduct provisions of the guidelines to determine which sub-section of the guideline applies. This is to be done even if the applicable guideline provides multiple base offense levels from which to chose. The application notes make this clear:

> Section 1B1.2(b) directs the court, once it has determined the applicable guideline (*i.e.*, the applicable guideline section from Chapter Two) under § 1B1.2(a) to determine any applicable specific offense characteristics (under that guideline), and any other applicable sentencing factors pursuant to the relevant conduct definition in § 1B1.3. *Where there is more than one base offense level within a particular guideline, the determination of the applicable base offense level is treated in the same manner as a determination of a specific offense characteristic. Accordingly, the "relevant conduct" criteria of § 1B1.3 are to be used,* unless conviction under a specific statute is expressly required.

U.S.S.G. § 1B1.2, Application n. 2 (emphasis added); *see also* U.S.S.G. § 1B1.3(a) (noting that "the base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of the [relevant conduct provisions set forth under section 1B1.3]").

Taking into account relevant conduct, the Court has no difficulty in determining the appropriate base offense level within guideline 2A2.1(a) to be level 28 for attempted first degree murder. The guidelines mandate that the Court examine the acts committed by the defendant in the course of the offense as well as the harm that was the object of such acts. U.S.S.G. § 1B1.3(a). The Court need not go much beyond the elements of the offense of conviction to determine that the base offense level for attempted first degree murder applies. The evidence shows that Kwong carefully planned his attack on the prosecutor and intended to murder her as the spring-board for his plan to frame another person and secure "credit" for himself.

The evidence shows quite starkly that Kwong acted deliberately in his prolonged efforts to assassinate the Assistant United States Attorney. He went to extraordinary steps to set up the offense and rig the deadly device in such a way so as to frame Chan Wing Yeung. The evidence showed he purchased the gun using Chan's name over two months before he sent the booby-trapped package. He then planted Chan's name in the booby-trapped package and also slipped Chan's name on a piece of paper into the discarded barrel of the sawed-off rifle which he then planted in a public washroom inviting discovery by the authorities. Kwong's extensive planning and deliberate fabrications prior to the offense coupled with his continuing attempts after the offense to frame Chan, show beyond any question that Kwong acted maliciously and with premeditation. *See generally United States v. Shaw,* 701 F.2d 367 (5th Cir.1983), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984). This was no random act or spur of the moment resort to violence in the face of sudden emotion or desperation. There was never any such claim or defense, and indeed the only issue at trial was the identity of the would-be-murderer.

Indeed, the jury had no difficulty finding beyond a reasonable doubt that Kwong acted with malice and premeditation. The jury was instructed that:

> [T]he government must prove beyond a reasonable doubt ... that the defendant acted with malice aforethought. Malice is the state of mind that would cause a person to act without regard to the life of another. To satisfy this element, the defendant must have acted consciously, with

premeditation, and with the intent to kill another person.

Jury Charge, p. 9. Taking into consideration the evidence at trial as well as the elements of the offense of conviction, the Court is satisfied that relevant conduct mandates a base offense level of 28 since the object of the offense would have constituted first degree murder. Therefore, the base offense level for Kwong is 28 unless *ex post facto* considerations require the use of the earlier version of guideline 2A2.1.

*Ex Post Facto Clause*

■ Courts are directed to use the guidelines in effect on the date of sentencing unless such use would violate the *ex post facto* clause of the United States Constitution. U.S.S.G. § 1B1.11; *see also* 18 U.S.C. §§ 3553(a)(4), (5); *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); *United States v. Lara*, 905 F.2d 599, 602 (2d Cir.1990). Here, the *ex post facto* clause will be violated if Kwong's total sentence for the offense is greater under the guidelines now in effect (the 1994 guidelines) than it would be under the guidelines in effect on the day of the offense (the 1989 guidelines). *See Miller*, 482 U.S. at 435–36, 107 S.Ct. at 2453–54.

■ Guideline 2A2.1 was substantially revised with the changes becoming effective on November 1, 1990. Under the earlier version, effective in 1989, reprinted in 1994 U.S.S.G. Appendix C, Amendment 311, Kwong would face a base offense level of 20, compared to the base offense level of 28 under the current guideline. However, the adjustments for specific offense characteris-

tics are radically different under the two versions, so the Court must first compute the adjusted offense levels before it can determine whether an *ex post facto* problem exists.

Added to the base offense level of 20 under the 1989 guidelines would be adjustments of two levels for more than minimal planning, U.S.S.G. § 2A2.1(b)(1) (1989), and four levels for the use of a dangerous weapon, U.S.S.G. § 2A2.1(b)(2)(B) (1989). Neither of these adjustments has any counterpart in the current guidelines. In addition, Kwong could also face a two level adjustment under the 1989 version of section 2A2.1 if the Court finds the assault was "motivated by a payment or offer of money or other thing of value." U.S.S.G. § 2A2.1(b)(4) (1989). The current version of guideline, provides for a four level increase "[i]f the offense involved the offer or the receipt of anything of pecuniary value for undertaking the murder...." U.S.S.G. § 2A2.1(b)(2) (1994).

For the reasons that follow, the Court concludes that neither the two level increase under the 1989 guidelines nor the four level increase under the current guidelines for pecuniary motivation is applicable. Therefore, the Court determines that Kwong's base offense level of 20 under the 1989 guidelines would be increased by two levels for more than minimal planning and four levels for use of a dangerous weapon under guideline 2A2.1 (1989). This results in an offense level under the 1989 version of section 2A2.1 of 26. Under the current guidelines, Kwong would have a base offense level of 28 under section 2A2.1.[4] Therefore, an *ex post facto* issue

---

4. The total adjusted base offense level for Kwong is neither level 26 nor 28. Under both the 1989 guidelines and the 1994 guidelines, Kwong faces possible adjustments under sections 2J1.7, 3A1.2(a), and 3C1.1. Since these adjustments are the same under either version of the guidelines, the application of the adjustments will not affect the *ex post facto* clause issue. These adjustments will, however, increase his offense level. The application of these adjustments to Kwong is discussed more fully below.

The following chart compares the two calculations:

| Guideline | 1989 U.S.S.G. | | 1994 U.S.S.G. | |
|---|---|---|---|---|
| Base offense level | § 2A2.1(a) | = 20 | § 2A2.1(a)(1) | = 28 |
| + > minimal planing | § 2A2.1(b)(1) | = + 2 | no counterpart | |
| + use of firearm | § 2A2.1(b)(2) | = + 4 | no counterpart | |
| + $ motivation | Not applicable | (+2) | Not applicable | (+4) |
| Adjustments & Enh. | | | | |
| + while on release | § 2J1.7 | = + 3 | § 2J1.7 | = + 3 |
| + official victim | § 3A1.2(a) | = + 3 | § 3A1.2(a) | = + 3 |
| + obstr. of justice | § 3C1.1 | = + 2 | § 3C1.1 | = + 2 |
| Adjusted Offense Level | | 34 | | 36 |

exists and the 1989 version of the guidelines must be used.

*Specific Offense Characteristic Increase for Pecuniary Motivation*

■ As noted above, the Court concludes that Kwong's base offense level should not be increased because of the pecuniary motivation enhancement under either the new or the old guideline 2A2.1. Both parties agree.

The increase is not warranted under the current guidelines because the offense did not involve "the offer or the receipt of anything of pecuniary value for undertaking the murder...." U.S.S.G. § 2A2.1(b)(2). While Kwong may have hoped to obtain a financial benefit from this offense, and more specifically from his attempt to set up Chan to take the fall for the offense, the mere expectation of financial gain does not amount to either "the offer or the receipt of anything of pecuniary value." *See, e.g., United States v. Jones,* 863 F.Supp. 575, 578–79 (N.D.Ohio 1994) (finding the financial gain to be speculative and attenuated so as to make the enhancement for pecuniary motivation inappropriate).

Although the language under the 1989 guidelines appears on its face to be broader than the current version, at least in the context of this case, the application of this increase under the 1989 version is also unwarranted. The 1989 manual provided for a two level increase if the "assault was motivated by a payment or offer of money or other thing of value." U.S.S.G. § 2A2.1(b)(4) (1989). While nothing in this language indicates that the sole or primary motivation be economic, it is apparent that the conduct this language was trying to get at was the murder-for-hire situation. *See, e.g., United States v. Dota,* 33 F.3d 1179, 1188 (9th Cir. 1994); *United States v. Parker,* 989 F.2d 948, 952–53 (8th Cir.1993). Here, any possible economic motivation is far more attenuated than in the murder-for-hire scenario.

Quite clearly, the offense conduct did not involve the offer, receipt, or payment of money or other item of pecuniary value for un-dertaking the murder. Kwong acted alone, for his own account, in an effort to curry favor with investigating authorities, to revive his stagnant relationship with them, and ultimately to receive favorable consideration at sentencing. While one might question whether Kwong was to some extent "motivated by a payment or offer of money," U.S.S.G. § 2A2.1(b)(4) (1989), because he did receive some money from law enforcement authorities to sustain him during his earlier period of cooperation, the evidence shows that the single overriding consideration that spawned the homicidal plan was Kwong's desire to obtain a lenient sentence and his ultimate freedom. An increase for economic motivation is, therefore, unwarranted.

*Other Adjustments & Enhancements*

Three other adjustments and enhancements do apply and increase Kwong's offense level. None is disputed by the parties. Since the offense was committed while the defendant was on release, per guideline 2J1.7, the offense level is increased by three levels. Since the intended victim was a government employee and since the offense was motivated by the victims status, per guideline 3A1.2, the offense level is increased by another three levels. And, since Kwong willfully obstructed and impeded the administration of justice during the investigation of the offense, per guideline 3C1.1, the offense level is increased by an additional two levels.

Kwong's adjusted offense level is, therefore, 34. This is computed from a base offense level of 20 under 1989 guideline 2A2.1. Added to the base offense level are six levels of increase for the specific offense characteristics specified above and set forth in 2A2.1(b)(1) and 2A2.2(b)(2)(B). Also added to the offense level are the eight levels of adjustments specified in the preceding paragraph.

*Combination of Offenses*

Kwong is being sentenced not just on the above offense relating to the attempted murder of an Assistant United States Attorney, but also on the convictions to which Kwong

pleaded guilty in 1988 and which led to Kwong becoming a cooperator. The defendant had previously argued that these two sentences should be run concurrently not consecutively. This argument misses the point since the Court today is imposing sentence on both indictments. When the Court is imposing a sentence on multiple indictments at the same time, it must impose a sentence as if it were sentencing on multiple counts of conviction. *See* U.S.S.G. § 5G1.2(b) & Commentary.

Chapter three, part D of the Sentencing Guidelines manual provides procedures for determining the combined offense level on multiple counts of conviction. Per guideline 3D1.1(a)(1), the Court first groups related counts. For the 1988 offense, docket number 88–CR–266–01, the original presentence report properly determined the adjusted offense level was 26 [5] based on the grouping and combining of related counts within that indictment. Using guideline 3D1.4 to determine the combined offense level, the Court determines that the 1988 offense is within eight levels of the more serious attempted-murder conviction. Using guideline 3D1.4(b) the total number of units is computed to be 1½, and therefore the offense level for the more serious offense is increased one level to reach the total adjusted offense level for the combined offenses. This total adjusted offense level for the combined offenses is 35.

*Criminal History Category*

The number of criminal history points attributable to Kwong under the guidelines does not warrant detailed discussion despite the complexity of the issue. The Court has previously determined that the government failed to pursue the propriety of assigning Kwong two criminal history points, pursuant to guideline 4A1.1(e), for committing the offense less than two years after release on a previous offense.

While these two points might be warranted if Kwong commenced the illegal activity underlying the 1988 offense on the date the presentence report indicates, a factual hearing would have to be held to make that determination. Because the government has declined the opportunity to pursue this issue, the two points cannot be added.

Kwong's criminal history points, therefore, total five points based on a 1981 offense and a 1982 offense. This places Kwong in a criminal history category of III.[6] Whether or not this understates Kwong's criminal history is explored below.

*Other Issues*

The defendant raises a number of other issues related to his sentencing; all but one are without merit. The only meritorious claim concerns the listing of certain charges as open charges within the presentence report. The Court takes this opportunity to note the dismissal of count 28 of indictment 88–CR–266 and all other counts of that indictment except for counts 1 and 11 to which Kwong pleaded guilty. The Court also takes note of the dismissal of all open counts of indictment 91–CR–928. This means, as is assumed throughout this memorandum, that this sentencing is limited to three counts—Counts 1 and 11 of indictment 88–CR–266 and Count 1 of indictment 91–CR–928.

■ Kwong makes several additional arguments relating to his sentencing, all of

---

5. The presentence report on that indictment applied a two level adjustment for acceptance of responsibility which lowered the offense level to 24. While that adjustment may have been appropriate at the time the report was issued (prior to Kwong attempting to kill the AUSA), the adjustment for acceptance of responsibility is clearly not warranted after the attempted murder and the combination for sentencing purposes of the 1988 offense with the attempted murder offense. The guidelines make this clear. The adjustment for acceptance of responsibility is to be determined after the combination of counts of conviction under chapter three, part D. *See* U.S.S.G. §§ 1B1.1(d)–(e).

6. The Court also notes that an additional one point may be appropriate based on Kwong's 1978 criminal conviction. As per Guideline 4A1.2(e)(2), a sentence that was imposed within ten years of the instant offense should be considered in computing the defendant's criminal history category. Since the Court is imposing sentence on both the 1988 offense and the attempted murder today, it would be proper to consider the instant offense as having commenced in 1988. Therefore, this additional point is warranted. However, this additional point still leaves the defendant with a criminal history category of III.

which are rejected. First, as discussed above, Kwong urges for the application of an adjustment for acceptance of responsibility based on his plea and cooperation related to indictment 88–CR–266. An adjustment for acceptance of responsibility should occur after the combination of offense for which the Court is imposing sentence. *See* U.S.S.G. §§ 1B1.1(d)–(e). After combining offenses for sentencing purposes, this issue becomes absurd and the Court concludes that no such adjustment is warranted.

■ Additionally, defendant moves for a downward departure based on his claustrophobia and "suicidal ideation." *See* October 28, 1994, letter from Lawrence Schoenbach to the Court, p. 17. Not only has this condition improved, *id.,* but even if the Court accepts the speculation that such a condition may reoccur, a downward departure is unwarranted. The only case cited by the defendant, *United States v. Lara,* 905 F.2d 599 (2d Cir.1990), is at best only marginally relevant. Here, no reason has been given by the defendant to indicate why this condition should be considered extraordinary. Exercising its discretion, the Court opts not to apply a downward departure for this condition.

■ Finally, defendant moves for a downward departure based on his years of cooperation following his 1988 guilty plea. This argument flatly disregards the fact that during this period of cooperation and in the hopes of furthering his usefulness to the government, Kwong attempted to kill an Assistant United States Attorney, Kwong tried to frame another individual in the attempted murder, Kwong gave false information to the DEA, and Kwong sought to obtain money from the government. Looking at Kwong's offense in its entirety, the Court has no problem in determining that a downward departure based on Kwong's cooperation with the government is entirely unwarranted.

*Upward Departure*

Prior to imposing sentence, the Court must finally determine whether an upward departure, pursuant to guideline 4A1.3, is warranted based on the adequacy of the defendant's criminal history category. Important to the Court's determination of this issue is the effect that the combining of the two indictments for sentencing has on the overall sentence.

Had Kwong first been sentenced for the 1988 offense and then sentenced for the attempted murder of the Assistant United States Attorney, Kwong's criminal history category for the later offense would be IV. Due solely to the fortuitousness of being simultaneously sentenced for this unrelated offense, Kwong's criminal history category is III. As discussed above, the combination of offenses did result in a one level increase in Kwong's adjusted offense level from 34 to 35. Therefore, had the sentences for these two separate indictments not been combined, Kwong would have faced a sentence on the more recent conviction with an adjusted offense level of 34 and a criminal history category of IV. This would mean a range of 210–262—the same range Kwong faces with an adjusted offense level of 35 and a criminal history category of III. Therefore, the fact that Kwong is being sentenced on both indictments simultaneously does not affect Kwong's guideline range.

Whether or not Kwong's criminal history category understates his criminal past is another question. Although it very well might, the Court finds no need to upwardly depart as the sentencing range of 210 to 262 months provides adequate sentencing latitude.

*Sentence*

■ Finally, the Court comes to the point of determining Kwong's sentence for these offenses. Based on the foregoing and for the reasons expressed above and in open court, the Court determines the guidelines range to be 210 to 262 months. Exercising its discretion, the Court imposes a sentence upon Kwong at the maximum end of the range— 262 months.[7]

---

7. Kwong is also sentenced to three years of supervised release, U.S.S.G. §§ 5D1.1(a) & 5D1.2(b)(1), and a mandatory special assessment of $50 for each of the three counts to which he is being sentenced. 18 U.S.C. § 3013.

This lengthy sentence is warranted for many reasons, many of which were expressed at the sentencing hearing held on January 19, 1995. The gravity of the offense cannot be over-stated. The Court is unable to identify any facts that might be argued in mitigation. Kwong has exhibited no remorse or emotion. His acts were the product of careful and self-serving design. The life of a public servant was used as a pawn in his ruthless attempts to ingratiate himself to law enforcement officials. His punishment must be severe.

The sentence of 262 months is slightly in excess of the 20 year maximum sentence permitted by Title 18, United States Code, Section 1114. However, such a sentence is allowable since the sentence imposed was for multiple counts of conviction, *see* U.S.S.G. § 5G1.2, as well as for a violation of Title 18, United States Code, Section 3147, which permits a consecutive term of imprisonment of up to ten years.

As a final issue, Title 18, United States Code, Section 3147 requires the Court to attribute a portion of that sentence to the enhancement Kwong received for committing the offense while on release for an earlier offense. The Court notes that 74 months of Kwong's sentence is attributed to his committing the offense while on release for a previous offense. U.S.S.G. § 2J1.7.